In the Matter of the Estate of J. LANSING STEWART, Deceased.

Surrogate's Court, Monroe County, December 15, 1937.

*H. H. Bly*, for the executors.

*T. P. McCarrick*, for widow, respondent.

*W. S. Forsyth*, for Stewart-Bennett, Inc., and for a residuary legatee.

FEELY, S. During the preliminary examination of accounting executors and trustees under the will of the above-named testator, one of whom is individually a stockholder in a corporation in which

this estate owns some of the capital stock, the examining counsel for the life beneficiary issued a broad subpœna *duces tecum* requiring the production by the corporation of all its records and papers. Thereupon the corporation by its counsel appeared specially in the accounting proceeding in order to move to set aside the subpœna on the ground that it amounted to an inspection of all the records of a body not a party to the proceeding, and that it had not been based on a court order. Thereupon in his answering affidavits the examining counsel prayed for similar relief to that sought by the subpœna. This counter motion was opposed by the counsel for the corporation.

In the course of the preliminary examination already had, no objections having been filed, it had been ascertained to be the undisputed fact that testator died in June, 1934, leaving a will made four years before in which after bequests of household contents, and an automobile and $2,000, the residue of the estate is put in trust to pay the widow for her life the balance of the income after payment to testator's sister of an annuity of $600 during the term of the trust. The representatives were authorized to retain testator's investments; and were not to be compelled to account sooner than two years after probate. A local trust company and a nephew of the testator were named executors and trustees, and letters issued in June, 1934.

The widow's income was thought by her to be low, and in 1937 she asked for this accounting; and in the course of the examination some facts were brought out preliminary to the question as to the extent to which the life beneficiary could examine the books of the corporation in which testator and his nephew were interested as stockholders, and in which the nephew is president and general manager. This corporation bore the names of the testator and the nephew, being known as the Stewart-Bennett Company. Each of them held 348 shares of its capital stock, the remaining 143 shares being held by four other persons. The testator himself leased the land and buildings used by the company to the nephew individually and on terms most favorable to the latter; and the lessee sublet part of the property to the corporation, and the rest to a parking station. The details of these leases and rentals have already been shown herein by the accounting party. The testator at death was indebted to the company for personal advances in the sum of $2,441.86, and had a credit of arrears of salary in sum of $424. These matters were set out in totals in the account; and on the examination the account of advances was shown with vouchers. Other matters, set out in the widow's reply affidavits, were also brought out; and thereupon the subpœna in question issued. The

motion to set aside the subpœna has been, to some extent, superseded by the motion for a general inspection of the corporation's books. Both depend on the same rules of law.

Under the rule laid down in *Matter of Ebbett* (149 Misc. 260; 153 id. 775), a life beneficiary's counsel, exercising his right to examine the accounting party, without first having filed objections, has no privilege of unlimited preliminary delving into the affairs of a nonparty corporation over which the trustee did not have full control. In the absence of such control, the acts of the corporation cannot be considered the trustee's acts to be detailed *in extenso* in his account as such trustee; nor be made the subject of a preliminary examination in the nature of an examination before trial. From that ruling it follows that when letters issued to the same person who then was both general manager as well as executor and trustee, he then became, by virtue of his holding 348 shares individually and also a like amount as trustee, empowered to control the corporation; and what use, if any, he then made of that power in a way that concerned the beneficiary's income, during the period following the issuance of letters to him, is a subject on which he may be examined personally in his accounting as a trustee. (*Matter of Steinberg,* 153 Misc. 339; *Matter of Auditore,* 159 id. 402.) The ruling would probably be the same were it to appear that the trustee benefited individually on a vote in which he received the aid of the 143 shares, and voted his own individual holdings in his own favor, but either did not vote the estate holdings or voted them in opposition. In the course of such examination the trustee may refer to the corporate records in so far as may be necessary; and the counsel for the widow may inspect the corporate records of any such act done during the period subsequent to letters; but this privilege is one that is usually limited, and does not ordinarily extend to an examination of all the records of the corporation. (See *Matter of Dimon,* 155 Misc. 311.) Other restrictions, as to time, examiner, privacy, etc., are laid down in *Sanderson* v. *Cooke* (256 N. Y. 73). In so far as the Surrogate's Court is concerned, one of the reasons given for this ruling is that this inspection is not sought for the purpose of enforcing any corporate right, but to obtain information for the personal use of the beneficiary, in order to surcharge the trustee individually, that is to say, in aid of litigation not affecting the corporation. (See *Matter of Gaines,* 180 N. Y. Supp. 191; affd., 190 App. Div. 941; *Matter of Taylor,* 117 id. 348.)

Before the corporation's records are produced for examination in the trustee's accounting proceeding, there should be some proof both that income fell off after letters, and also as to any such acts, detrimental to income, having been done by the trustee since the

date of his letters as such; and on that showing, any contemporaneous corporate record thereof is available to the examiner in this accounting proceeding. The contracts and leases aforesaid were all made in testator's lifetime, and not by the executor and trustee as such. Rentals have been reduced; but whether salaries were increased since trustee letters issued, does not yet appear. The fact that the nephew accepted the trusteeship does not require him to surrender the benefits his uncle conferred on him by those favorable *inter vivos* leases and contracts; nor does it appear the corporate records would be necessary in respect to any of those matters. They are beyond the control of the surrogate.

The value of this closely held stock is very problematical, notwithstanding in this record it was shown to have been taxed in this estate at par at $100 a share. (See *Matter of Kennedy*, 75 App. Div. 188.) It has slight bearing on the adequacy of income. The company operates as building contractor, and the income per share depends more on the state of business, and on salaries, than on the book value, or the very limited market value. Throughout the United States, building has been dull for several years past. The matter of salaries as such is not under the control of the Surrogate's Court, but if the trustee admit he voted to increase them after letters issued to him, the directors' minutes of this matter might be within the surrogate's jurisdiction on the trustee's accounting as items of evidence only.

It seems probable from the cases cited by the widow's counsel that the life beneficiary might obtain more adequate relief in Supreme Court than in this court, if her papers made out a case for it there. The unlimited, inherent power of the Supreme Court is quite different from the limited powers extended by statute to the Surrogate's Court in a matter like this where the individual rights of two stockholders, as between themselves, are involved. The cases cited as to the former do not apply to the latter court to the extent now claimed. Even the Supreme Court has refused to mandamus an inspection that was sought for such personal use, and not for the enforcement of a right against the corporation (*Matter of Gaines*, 180 N. Y. Supp. 191; affd., 190 App. Div. 941); and the same court has also refused an inspection of a corporation's books which was sought by a stockholder in a suit against its directors to recover damages sustained by him by reason of a false report published by them, whereby the stockholder was induced to become a stockholder (*Matter of Taylor*, 117 App. Div. 348); although it has been said that a more liberal ruling has been made since then in a like case.

The claim made herein by the widow's counsel, arguing for a liberal application here by the surrogate of powers fully possessed by equity only, that the life beneficiary would not have standing in equity as a " stockholder," does not seem well founded. It has been held that with respect to the right to bring a minority stockholder's action " one who holds shares as a trustee is on the same plane as one who holds them in his own right " (*Treadwell* v. *Salisbury Mfg. Co.*, 7 Gray [Mass.], 393. See, also, *Matter of Kennedy*, 75 App. Div. 188), and may maintain such an action. A local trust company herein is the cotrustee with testator's nephew; and if it, on demand by the life beneficiary, refused to institute such action, she might bring the action in her right as the equitable owner of the income of said stock. (*Harris* v. *Cheetham*, 180 N. Y. Supp. 106.) Every person having any equitable interest in the stock of this corporation is interested in this action. (*Baum* v. *Sporborg*, 146 App. Div. 537.) The case is not one where the Surrogate's Court is the only resort for the testator's widow. The action of the Surrogate's Court should be restricted to the accounting proceeding, and to such acts as may have been done in the corporation while the trustee had full power, by virtue of his own holdings, and also under the letters issued to him as trustee. Nothing yet appears in this record to warrant an unlimited inspection herein of all the records of this non-party corporation. The record does not justify the assumption underlying most of the argument for the widow that the present low return on this corporate stock is due to anything this trustee did as such. While the trustee was on the witness stand he was not asked to explain the alleged lowness of the dividend. The favorable contracts and leases made with the testator himself seem rather to be the cause of the widow's present plight, aside from the general state of the contracting business. Apparently her trouble is chargeable to her own husband, rather than to the latter's executor and trustee. There is no suggestion that a better return from the stock was had in testator's lifetime, *e. g.*, for the years 1930 through 1934. With his death in 1934, his salary ceased; and the widow's situation accordingly changed. Thereafter she had only the dividends coming in from the corporation. The order asked for in folio 16 of the counter affidavits filed by the widow on November 19, 1937, calls for inspec-- tion of every record of every transaction, at any time, between the testator, his nephew, and the corporation, or any of them, in any capacity. This is too broad in respect to time, because it is not limited to transactions of the trustee as such, that is, since the date letters as such were issued to him. The request is further without the support of anything brought out in the examination of the

trustee, had up to this point, which might indicate he had during that period of his letters done anything which might impair the income of the corporation's stock, or be to the detriment of the life beneficiary.

This motion for inspection is accordingly denied, but without prejudice to renew it, if and when the record discloses some ground to suspect that during the period of time subsequent to the issuance of letters herein the individual executor and trustee, who is also a corporate director, did something which might impair the income or rights of the life beneficiary in respect of the corporation stock. If such showing be made, an order of inspection may be asked for, limited both in the respects above mentioned, and the records pertaining to that time, but also in the respects mentioned in *Sanderson* v. *Cooke* (*supra*), as may be hereafter agreed upon or determined. The use of subpœna *duces tecum* must be subject to the same limitations as are hereinbefore set out.

Enter an order in accord with this decision, granting the motion to set aside the subpœna, and denying the motion for inspection, but without prejudice, as aforesaid.