FRANK H. MADDEN, Plaintiff-Appellant, *v.* UNIVERSITY CLUB OF EVANSTON *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-296

Opinion filed June 19, 1981.

Frank H. Madden and Dalton P. Grief, both of Chicago, for appellant.

John L. Flynn, of Flynn, Galvin & Ryan, of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff appeals from an order dismissing his amended complaint to foreclose a mortgage on property owned and occupied by the University Club of Evanston. He brought suit in his capacity as one of four trustees under a trust agreement which was created to refinance an existing bank mortgage. Plaintiff also asserts a claim based on his status as a beneficiary of the trust. The trial court granted defendants' section 48 motion to dismiss on the basis that plaintiff lacks legal capacity to maintain the suit. (Ill. Rev. Stat. 1979, ch. 110, par. 48(b).) We affirm.

The facts may be stated briefly. In 1973 the University Club of Evanston had a mortgage with State National Bank which was due to mature. When the bank declined to extend the loan, the Club refinanced the mortgage by soliciting its members to lend money to the Club. Ninety-five members contributed various amounts, totaling $79,200, which was deposited in the bank. Pursuant to a trust agreement dated October 23, 1973, the Club executed a bearer note for $85,000, payable in five years at 8% interest. The contributing Club members received certificates of participation, which represented their equitable interest in the note. The note was secured by the Club's property, which was conveyed by a trust deed held by the bank. Plaintiff and four other Club members agreed to act as trustees. As part of their responsibilities under the trust agreement they were to secure payment of the promissory note upon its maturity on October 23, 1978.

On October 24, 1978, plaintiff filed a complaint to foreclose the mortgage on the Club property because the other trustees allegedly failed to perform their duty to "secure payment" of the note. The Club and the three other trustees moved to dismiss the action on the grounds that plaintiff, as one of four trustees, was unauthorized to bring suit against the trust property. The defendant trustees also averred, through affidavits, that they had "contacted all note holders as to their preference in liquidating or extending their indebtedness, that holders of notes totaling in excess of $51,500 of the $85,000 [elected] to extend the due date of their notes for five years and that the remainder will be paid." Defendants' motion to dismiss was granted and plaintiff was given leave to file an amended complaint. This complaint was subsequently dismissed, with prejudice. On appeal, plaintiff contends that the other trustees are in breach of trust because their loyalty to the Club exceeds their dedication to the certificate holders.

OPINION

The only issue before us is whether plaintiff has standing to maintain this action to foreclose the mortgage on the Club property, either in his capacity as a trustee or in his individual capacity as one of the certificate

holders. The essence of plaintiff's theory is that, since the other trustees have abdicated their trust duty to secure payment of the note, he is the sole "active and independent" trustee. As such, it is his mandate to bring this action on behalf of all certificate holders.

■■ We are not persuaded by this theory. His power as one of several trustees is limited by the rule that a co-trustee cannot exercise a joint power individually. (*Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262.) Section 10 of the Trusts and Trustees Act (Ill. Rev. Stat. 1979, ch. 148, par. 110) codifies the principle that the administration of the trust is left to the discretion of a majority of trustees. This section provides:

> "If there are 3 or more trustees of a trust, a majority of the trustees are competent to act in all cases after prior written notice to, or written waiver of notice by, each other trustee, but a dissenting trustee has no liability for the acts of the majority."

The practicality and fairness of this section is evident: it facilitates trust management because it (1) allows co-trustees to act without unanimous agreement and (2) frees dissenting minority trustees from liability which may result from the acts of the majority. The dissenter is not, however, empowered to bring an action involving the trust property contrary to the wishes of the majority. In the pending case the three defendant trustees did not authorize plaintiff's foreclosure suit as a means to "secure payment" of the note upon its maturity. On the contrary, they were pursuing the plan to extend or renew the note through those Club members who were willing to forego immediate payment of their certificates.

■■ Under these circumstances it does not appear that plaintiff has standing to sue for the foreclosure of the mortgage. As we have recognized, courts will not generally interfere with trustees' discretionary decisions absent proof of fraud, bad faith, or an abuse of discretion. (*Graham Hospital Association v. Talley* (1975), 29 Ill. App. 3d 190, 329 N.E.2d 918.) Courts also resolve "deadlocks" among trustees whose agreement is necessary under the terms of a trust instrument. (*Stuart v. Continental Ill. National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262.) Plaintiff's allegations, however, fall short of indicating any fraud or bad faith. Indeed, it appears that the defendant trustees are attempting to effectuate the trust purpose of prolonging the life of the Club for the benefit of its members. It cannot be contended that the four trustees are deadlocked as to the proper course of action; only plaintiff favors foreclosure. Nor does it appear that the three trustees have abused their discretion under the trust agreement. Although plaintiff's argument implies that they had *no* discretion regarding payment of the note on its maturity, we do not believe that the alternative refinancing plan can be

characterized as a breach of the trust agreement. The interests of the certificate holders have been fully preserved by their right to liquidate their certificates. All trust beneficiaries are or were[1] Club members who voluntarily refinanced their Club's original bank mortgage, to permit the Club's continued operation. If a second refinancing is feasible and the members who do not wish to extend their certificates are allowed to liquidate them, there is no injury to anyone's interests. We conclude, therefore, that plaintiff lacks standing, as a trustee, to foreclose the mortgage.

■■ We further find that plaintiff lacks standing to sue as an individual beneficiary of the trust. Defendants have tendered payment of his $500 certificate of participation in the $85,000 promissory note[2]—all that he is entitled to receive. If he or any other beneficiaries were refused payment they presumably could maintain an equitable action against the trustees, although they could not sue on the instrument itself because they do not have legal title. (See *First Securities Co. v. Schroeder* (1953), 351 Ill. App. 173, 114 N.E.2d 426.) In view of defendants' tender of payment, however, we do not believe plaintiff, as equitable owner of an interest in the note, has standing to compel foreclosure on the mortgage.

As a final argument, plaintiff briefly alludes to paragraph 17 of the trust agreement which provides for the termination of the trust two years after the maturity date of the note. Presumably, plaintiff urges us to hold that the trustees were powerless to extend the note because the two year period has elapsed. The supreme court has stated that if a creator of a trust specifically fixes its duration, "his direction will * * * normally be given effect." (*La Salle National Bank v. MacDonald* (1954), 2 Ill. 2d 581, 587, 119 N.E.2d 266, 269.) Nevertheless, the court noted that "the trust will not terminate on the expiration of the period fixed, if at that time the purposes of the trust have not been accomplished and if the settlor indicated that the trust should continue until the accomplishment of its purposes. In such a case, the provision that the trust terminate on the expiration of the period is regarded as directory." 2 Ill. 2d 581, 587.

■■ We believe that a directory construction of the trust termination date in this case is justified. Evidently, one purpose of the members' refinancing plan was to rescue their Club from whatever legal action its creditors could pursue against the Club. To accomplish this they used their own money to pay off the Club's creditors and to retire the original bank loan. To place a strict and literal construction on the trust termination date

---

[1] Plaintiff, who has moved out of Illinois, is no longer a member of the Club.

[2] Although it is not clear from the record that plaintiff was offered, in addition to $500, his share of the 8% accrued interest on the note, we assume that all certificate holders who elect to be paid the value of their certificates will also receive a proportion of the interest.

seemingly would defeat the purpose of the trust. Moreover, the matured promissory note would remain payable, regardless of any "termination" of the trust agreement. Consequently, we find that the defendant trustees did not lose the power to "secure payment" of the note for the beneficiaries, despite the trust termination provision.

For the foregoing reasons we hold that the trial court properly dismissed plaintiff's complaint to foreclose the mortgage on the Club property.

Affirmed.

LORENZ and MEJDA, JJ., concur.