**Myron EDGEWORTH, Jr., Plaintiff,**

v.

**The FIRST NATIONAL BANK OF CHICAGO, et al., Defendants.**

**VICTOR OOLITIC STONE COMPANY, a corporation, John R. Edgeworth and Terrence D. Edgeworth, Defendants–Counterclaimants**

v.

**Myron EDGEWORTH, Jr., Plaintiff–Counterdefendant.**

**No. IP 85–1642–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 20, 1988.

984

Kenneth R. Gaines, Altheimer & Gray, Chicago, Ill., Philip A. Terry, McHale, Cook & Welch, Indianapolis, Ind., for defendants Victor Buff Stone Co. and Indiana Creek Land Co.

Henry L. Mason, III, Sidley & Austin, Chicago, Ill., James A. McDermott, Barnes & Thornburg, Indianapolis, Ind., for defendants First Nat. Bank of Chicago, Robert Joynt, William Grant.

James L. Simon, Schuyler, Roche & Zwirner, Chicago, Ill., Harry Rider, Rider, Freiherr & Rawley, Indianapolis, Ind., for defendants Victor Oolitic Stone Co., John R. Edgeworth, Terrence D. Edgeworth.

James R. Cotner, Cotner, Andrews, Mann & Chapman, Bloomington, Ind., for defendants Patricia and Richard Letsinger.

Kenneth W. Humphries, Owensboro, Ky., Thomas J. Kimpel, Merrill, Johnson & Kimpel, Evansville, Ind., for plaintiff.

## ENTRY

BARKER, District Judge.

This matter is before the court on the motion for summary judgment of defendants Victor Oolitic Stone Company ("Victor Oolitic"), John R. Edgeworth, and Terrence Edgeworth, filed May 12, 1985 (the first motion for summary judgment). Defendant First National Bank of Chicago, Illinois ("the Bank"), has joined in that motion. Also before the court is the second motion for summary judgment of the same defendants (not including the Bank), filed March 16, 1987. In conjunction with their motions for summary judgment, these defendants also request the imposition of sanctions against the plaintiff Myron Edgeworth, Jr., pursuant to Fed.R.Civ.P. 11. All motions are now fully briefed. For the reasons set forth in the memorandum below, the court now GRANTS the first motion for summary judgment and DENIES the second motion for summary judgment. The request for sanctions is GRANTED to the extent described below. The defendants' request for oral argument is DENIED.

### Memorandum
#### "Cast of Characters"

The plaintiff MYRON EDGEWORTH, JR., grandson of Michael J. Edgeworth, is one of the three trustees of the Michael J. Edgeworth Trust ("the Trust"). He is also the president of Victor Buff Stone Company ("Victor Buff"), though not personally a stockholder in the company. The plaintiff, in addition to being a co-trustee, is the beneficiary of one-half of the Trust's income.

\* \* \*

The TRUST, created by Michael J. Edgeworth in 1932, has been and now is the owner of a majority (almost eighty percent) of the issued and outstanding shares of Victor Buff. It also owns about twenty-four percent of the shares of defendant Victor Oolitic Stone Company ("Victor Oolitic"). Finally, the Trust owns a majority of the shares in Indian Creek Land Company ("Indian Creek").

\* \* \*

The defendant FIRST NATIONAL BANK OF CHICAGO, ILLINOIS ("the Bank") is also a Trustee of the Trust, acting through its agents, defendants ROBERT JOYNT and WILLIAM GRANT. The Bank, through agents Joynt and Grant, is

also a director of Victor Buff and Indian Creek.

\* \* \*

Defendant PATRICIA EDGEWORTH LETSINGER is also a Trustee of the Trust. Granddaughter of Michael J. Edgeworth and cousin of Myron Edgeworth, Jr., she is the beneficiary of one-sixth of the income of the Trust. She is also a director of Victor Buff and Indian Creek. She personally owns small amounts of stock in Victor Oolitic and Victor Buff.

\* \* \*

Defendant RICHARD LETSINGER is the husband of Patricia Letsinger. He is an officer of Victor Buff, and a director and officer of Indian Creek.

\* \* \*

Defendant JOHN R. EDGEWORTH, grandson of Michael J. Edgeworth and brother of Patricia Letsinger, is the beneficiary of one-sixth of the income of the Trust. He was until 1981 a director of Victor Buff and is now an officer and director of Indian Creek. Together with his brother Terrence he owns about seventy percent of the shares of Victor Oolitic as well as a small amount of stock in Victor Buff.

\* \* \*

Defendant TERRENCE D. EDGEWORTH, grandson of Michael J. Edgeworth and brother of Patricia and John, is the beneficiary of one-sixth of the income of the Trust. He is a director of Victor Buff. With his brother John he owns seventy percent of Victor Oolitic and a small amount of stock in Victor Buff.

\* \* \*

Defendant VICTOR BUFF is a land-holding company near Bloomington, Indiana, that owns land upon which there are limestone deposits. Victor Buff was once owned by Michael J. Edgeworth.

\* \* \*

Defendant VICTOR OOLITIC, also once owned by Michael J. Edgeworth, is an operating company that quarries limestone. Since about 1927, it has quarried limestone from lands owned by Victor Buff.

\* \* \*

Defendant INDIAN CREEK is the owner of land adjacent to Victor Buff property.

## FIRST MOTION FOR
## SUMMARY JUDGMENT

### "ACT I"

"SETTING:" Circuit Court of Cook County, Illinois, *February 21, 1985*.

On this date, the Illinois court entered a final decree ending ten years of litigation involving the Trust over dealings among the Trust, Victor Buff, and Victor Oolitic. The primary issue in the Illinois litigation was a leasing arrangement by which Victor Oolitic was allowed to quarry limestone from the property of Victor Buff in exchange for payment of rents or royalties to Victor Buff. The Bank had brought the action as a co-trustee of the Trust to resolve any possible conflicts arising from this leasing arrangement. The other parties to this proceeding were Myron Edgeworth, Jr. and his two children, John Edgeworth, Terrence Edgeworth, Patricia Letsinger, Victor Buff, and Victor Oolitic.

The questions presented in that litigation, which had commenced in 1974, were whether Victor Buff should have a leasing arrangement with Victor Oolitic, and, if so, what the terms of the lease should be. In 1981, the Illinois Court of Appeals affirmed the lower court's 1979 order requiring Victor Oolitic and Victor Buff to terminate their then-existing lease and for further requiring Victor Buff to negotiate with Victor Oolitic or others for a new lease. Subsequently, Victor Buff and Victor Oolitic negotiated a new lease which Victor Buff presented to the Illinois court for approval in 1984. The plaintiff and his two children formally appeared and objected to the proposed lease.

On February 11, 1985, the Illinois court commenced a trial of the matter, hearing evidence from Victor Buff, Victor Oolitic, and the plaintiff and his children.

On February 21, 1985, the court entered its decree. The court approved the new lease, and in so doing, made several findings. First, it found that the directors of Victor Buff had negotiated in good faith and at arm's length over the terms of the new lease. Second, the court found that the parties had made some modifications to the lease after presenting it for the court's approval and that the formal objectors (including Myron Edgeworth, Jr.) had approved the lease with full knowledge of the interest other Victor Buff directors had in Victor Oolitic. Third, the court found that the lease had been approved and ratified by all of Victor Buff's directors and shareholders. Finally, the court found that the lease was fair and reasonable, was in accordance with the prior orders of the court and the appellate court, was the result of good faith, arm's length negotiations, and should be approved by the court.

The court therefore entered an order approving the lease and pronounced that it was entering "a final decree resolving all pending matters which were put in issue by the Petition of Victor Buff Stone Company filed on August 16, 1984." The court went on, however, to reserve specifically the issue of alleged underreporting by Victor Oolitic to Victor Buff of limestone quarried between 1978 and the date of the decree.

Since that decree, Victor Oolitic has continued to quarry limestone on Victor Buff property, pursuant to the lease approved on February 21, 1985.

### "ACT II"

"SETTING:" United States District Court for the Southern District of Indiana, *November 15, 1985*

On this date, Myron Edgeworth, Jr. filed a lawsuit against all the defendants listed above. Among his claims against the various defendants, he alleges that:

–Co-trustees Patricia Letsinger and the Bank have collaborated and conspired with the principals of Victor Oolitic to enter a lease favorable to Victor Oolitic. (Complt. ¶ 13)

–The co-trustees have acted in concert with Terrence and John Edgeworth to prevent leasing to others. (Complt. ¶ 14)

–The Trust would benefit if more Victor Buff property was leased to other quarriers and that Terrence and John and the co-trustees have thwarted the plaintiff's attempts in this regard. (Complt. ¶ 15)

–The co-trustees have elected directors of Victor Buff who do not act in the best interests of Victor Buff, the Trust, and the Trust's beneficiaries. (Complt. ¶ 19)

–The co-trustees have breached their fiduciary duties by favoring their own interests, and those of Terrence and John, at the expense of the plaintiff. (Complt. ¶ 23)

–The co-trustees committed waste of Trust assets by improperly authorizing the payment of attorney fees. (Complt. ¶ 24)

–The co-trustees have breached their fiduciary duty to manage the Trust assets properly and have knowingly acquiesced in improper use of Trust property. (Complt. ¶¶ 25–26)

–The co-trustees have acted fraudulently. (Complt. ¶ 27)

–The plaintiff has acted in good faith and has resisted the defendants' actions. (Complt. ¶¶ 33–34)

–The lease between Victor Buff and Victor Oolitic was not an arm's length transaction. (Complt. ¶¶ 35–36)

–Terrence Edgeworth, in voting to enter a lease with Victor Oolitic, is guilty of conflict of interest and insider dealing. (Complt. ¶¶ 37–38)

–The directors of Victor Buff have used their positions for personal gain. (Complt. ¶ 46)

–Defendant Joynt has determined that the Trust can favor Victor Oolitic over Victor Buff, and the Trust, under the control of Patricia Letsinger and the Bank, continues to favor Victor Oolitic. (Complt. ¶¶ 75–76)

–The defendants have wrongly denied reimbursement of the plaintiff's costs and attorney fees. (Complt. ¶ 77)

–The defendants have breached their fiduciary duties to the Trust and/or to Victor Buff and Indian Creek. (Complt. ¶ 80)

In this litigation, defendants John Edgeworth, Terrence Edgeworth, Victor Oolitic, and the Bank have filed a motion for summary judgment, maintaining that the plaintiff's claims are barred by virtue of the final decree entered in the Illinois court on February 21, 1985. They, therefore, seek dismissal of the plaintiff's claims just listed and the allowance of attorney fees, costs, and expenses pursuant to Fed.R.Civ.P. 11.

■ Under the doctrine of res judicata (or claim preclusion), a final judgment on the merits precludes further claims by the parties or their privies based on the same cause of action. Also, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination bars relitigation of the same issue in subsequent lawsuits involving parties to the prior litigation (collateral estoppel or issue preclusion). *See, e.g., Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). These doctrines, the defendants argue, bar the plaintiff's litigation of the claims earlier described.

The plaintiff has responded to this argument in two, rather inconsistent ways. First, he argues that the present lawsuit is really about Victor Oolitic's underreporting of its quarrying to Victor Buff, both prior to and subsequent to the 1985 lease. The issue of underreporting during the "interim" period—between 1978 and the 1985 lease—was specifically reserved and not adjudicated in the Illinois proceeding. Thus, the plaintiff contends, this underreporting, of which he now has evidence, shows that the Illinois decree approving the lease was obtained by collusion and should not have preclusive effect. He further argues that because he received expert evidence of underreporting only after the decree, gross injustice would result from the application of res judicata.

■ The plaintiff's argument is fundamentally flawed in a number of respects. First, his claims based on underreporting both before and after execution of the 1985 lease are not the subject of the defendants' motion. The defendants have made very clear from the beginning that they do not seek dismissal of the underreporting claims with their motion. Second, the recitation of facts to support his contention of fraud and collusion in the obtaining of the 1985 decree do not withstand even the most cursory scrutiny. For example, the expert report of alleged underreporting was actually in the possession of the plaintiff *during* the hearings leading to the 1985 decree. Although the plaintiff received a second report in November of 1985, he admits that the second report merely confirmed the earlier report.[1] Furthermore, the plaintiff's claim that he was coerced into approving the lease because an earlier "agreed decree" stipulated that royalties owed would be held in escrow until a new lease was entered is impossible to reconcile with the fact that the plaintiff expressly agreed to that earlier decree and stipulation. Additionally, the issue of underreporting was specifically raised and reserved in the Illinois proceeding. All parties knew of the "expert report." This issue could therefore not constitute the type of fraud or collusion that would vitiate the judgment entered in that proceeding. The plaintiff has admitted that he decided the Illinois effort was futile, so he simply, in his words, acceded to pressure from his counsel and the other parties and signed the lease. If such a strategy as this were recognized as a basis for relitigating all judicial resolutions with which parties later become dissatisfied, the courts would be rendered nothing more than grossly over-

---

1. Significantly, Mr. Edgeworth also did not seek relief from the judgment in the Illinois court on the basis of this "new evidence." Ill.Ann.Stat. ch. 110, para. 2–1202 (Smith–Hurd 1983).

crowded sounding boards, hearing disputes that have no end.

The plaintiff's second strategy for avoiding the preclusive effect of the 1985 judgment amounts, basically, to a re-fashioning of his complaint.[2] In other words, he suggests that he is not really complaining about issues relating to the negotiation of the 1985 lease, but to other dealings among the parties. His current claims, he argues, which arise primarily from underreporting, were not adjudicated in the prior action and "depend on the underreporting for their being."

The defendants do not quarrel with this contention. For purposes of this motion for summary judgment the defendants "agree entirely" with the argument that because the underreporting issue was reserved, the attendant causes of action arising from it were necessarily preserved.

From this area of apparent agreement plaintiff's contentions become confusing. In his Supplemental Response, plaintiff attempts to re-characterize those portions of the complaint to which the defendants have objected, suggesting that they are not about the negotiation or propriety of the lease after all, but present independent issues about other actions of the defendants. However, paragraph 13, for example, of the plaintiff's complaint alleges:

> On information and belief, Plaintiff asserts that Patricia E. Letsinger and First Chicago in their capacities as trustees have collaborated, conspired and agreed with the principle [sic] stockholders of Victor Oolitic, John R. Edgeworth and Terrance D. Edgeworth, to enter into lease agreements and other agreements which are extremely favorable to Victor Oolitic as a lessee of Victor Buff property.

Despite that allegation, plaintiff now maintains that he didn't really mean to complain about the 1985 lease between Victor Buff and Victor Oolitic, but that he is actually referring to "other agreements" between 1981 and 1985. He is vague about what such "other agreements" were.

■ Although some of the plaintiff's attempts to re-fashion his complaint are at least plausible, others, such as the plaintiff's allegations of fraud and collusion in the making of the 1985 lease, cannot circumvent the res judicata bar. In any event, this court and the defendants cannot be expected to surmise what the plaintiff really means when what he asserts in response to the motion for summary judgment is clearly and entirely a different matter from what is alleged in the complaint and has already been litigated. The court therefore will not attempt further to ascertain what claims the plaintiff really intends to assert. Rather, the court hereby GRANTS the defendants' first motion for summary judgment and DISMISSES, within the parameters of the court's previous analysis, those portions of the plaintiff's complaint directed in any way to the fairness or reasonableness of the 1985 lease and to the negotiations that culminated in that lease. This dismissal extends to all paragraphs of the complaint for which the defendants have sought dismissal (paragraphs 13–15, 19, 23–27, 33–38, 46, 75–76, and 79–81). The plaintiff is granted leave to amend his complaint to plead with greater particularity those claims, suggested in his Supplemental Response, which he may have that are not barred by this ruling. The plaintiff is given *twenty (20) days* from the date of this entry to effect any such amendment.

As a final matter, the defendants seek sanctions against plaintiff Edgeworth and his counsel, pursuant to Fed.R.Civ.P. 11 for their assertion in the present action of numerous claims clearly barred "[i]n open defiance of the Final Decree of the Illinois court."

Rule 11 provides that a signature upon a pleading, motion, or other paper constitutes a certificate that the signer has read the

---

**2.** The plaintiff's "Supplemental Response to the Oolitic Defendants' Motion for Summary Judgment" also contains a long recitation of facts relating to the negotiation of the lease approved in the 1985 decree as evidence of the collusion in the making of the lease. For the reasons previously discussed, these alleged facts, and the inferences the plaintiff urges should follow from them, will not be relitigated in this action.

document and that, "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Upon a finding of a violation of this standard, a court *shall* impose an appropriate sanction on the person who signed it, a represented party, or both.

The court will not reiterate all the reasons that the cited allegations of the plaintiff's complaint are absolutely foreclosed by the judgment in the Illinois proceeding, except to focus on the plaintiff's attempts to avoid the preclusive effect of the prior action on the basis of alleged fraud or collusion in the obtaining of that judgment. In support of that attempt, the plaintiff has relied on a "subsequent" expert report of alleged underreporting to suggest that the pertinent facts had not come to light at the hearing, thereby vitiating that decree. The court finds that these assertions are not based upon reasonable inquiry into the law and facts of this case. The plaintiff admits that at the time of the hearing he was in possession of an expert report substantially the same as the subsequent report. Furthermore, alleged underreporting was an issue brought to light during the hearing and, in fact, expressly reserved for later resolution.

▪ The plaintiff's attempt to relitigate the claims which are the subject of this motion, in light of these facts and the applicable law, compels the conclusion that these portions of his complaint were interposed for improper purposes.

That the plaintiff has rigorously pursued serious allegations of misconduct against the defendants is obvious; equally obvious, however, is the obligation of litigants and counsel to exercise good faith judgment in those pursuits. For these reasons, the court imposes the following sanction upon the plaintiff and his counsel, each to bear one-half the cost: Defendants John Edge-worth, Terrence Edgeworth, and Victor Oolitic are hereby awarded the reasonable costs, attorney fees, and expenses incurred in the filing and support of this first motion for summary judgment. The defendants shall submit itemization and documentation of these sums to plaintiff's counsel within *fifteen (15) days* of the date of this entry.

## SECOND MOTION FOR SUMMARY JUDGMENT

In their second motion for summary judgment, filed March 16, 1987, defendants John Edgeworth, Terrence Edgeworth, and Victor Oolitic maintain that they are entitled to judgment as a matter of law on the plaintiff's claims based on: (1) underreporting of Victor Oolitic's quarrying activity, and (2) the opposition of Victor Buff's directors to the leasing of additional property to competitors of Victor Oolitic.

The motion of the defendants is premised on three general arguments: that plaintiff does not have standing to pursue these claims, that plaintiff has failed to exhaust his private contractual remedy, and that there was no underreporting of Victor Oolitic's quarrying activity.

### Standing

First, the defendants maintain that plaintiff Edgeworth, whether as one of the three co-trustees or as an income beneficiary of the Trust, has no standing to sue the directors of Victor Buff. Similarly, they argue that he has no standing to sue Victor Oolitic on behalf of Victor Buff. Finally, they claim that plaintiff Edgeworth lacks standing, in the constitutional sense, to assert Victor Buff's failure to lease its additional property.

The plaintiff counters by numerous citations to the law of trusts relating to breach of fiduciary duty. By virtue of his relationship to the Trust, and the actions of the defendants in this case, he also contends that he is entitled to maintain suit against Victor Buff and Victor Oolitic and their respective officers and directors.

Both sides to this controversy have muddled the pertinent standing issues. The court will, therefore, attempt to set out the

various claims and discuss the standing issues relevant to those claims.

The plaintiff has cited numerous cases and other authority relating to the rights of trust beneficiaries and co-trustees to bring actions for breach of fiduciary duty and actions to compel trustees to act in accordance with their duties. *See, e.g., Restatement (Second) of Trusts* §§ 170–185, 201; *Scott on Trusts* §§ 199–205. That the plaintiff has standing to sue Patricia Letsinger and the Bank, as co-trustees of the Trust, is beyond dispute. The plaintiff, however, apparently confuses his standing to sue the co-trustees (in that capacity) with standing to sue corporations and directors of corporations. For these purposes, the plaintiff's reliance on the trust law cited is misplaced. The plaintiff attempts a giant leap in logic by his conclusion, based upon his discussion of the duties and causes of action relating to trustees, that he has established his standing to sue others who are not trustees.

Myron Edgeworth's claims against Victor Buff and its officers and directors seem to be based upon two plausible theories. First, some of his claims against the Bank, Patricia Letsinger, Richard Letsinger, and Terrence Edgeworth seem to be premised on the assertion that they, as officers and directors of Victor Buff, have knowingly been involved in the co-trustees' alleged breaches of their fiduciary duties to him as a beneficiary of the Trust. Normally, standing to sue third parties to assert the prerogatives of a trust lies solely with the trustees, not with a beneficiary.[3] *See, e.g., Madden v. University Club of Evanston,* 97 Ill.App.3d 330, 52 Ill.Dec. 963, 422 N.E.2d 1172 (1981) (based on Illinois law, which is applicable to the trust issues in this case). An exception to this general rule exists, however, as an outgrowth of an income beneficiary's right to sue trustees for breach of fiduciary duty. That is, if a third person has notice that a trustee is committing a breach of fiduciary duty and knowingly participates in the breach, then that third party may be liable to the benefi-

ciary. *See generally Restatement (Second) of Trusts* § 326. The rule was applied under Illinois law in *Chicago Park District v. Kenroy, Inc.,* 78 Ill.2d 555, 37 Ill.Dec. 291, 402 N.E.2d 181 (1980), in which the court pointed out that the third person's liability lies in restitution of any benefit obtained in the breach. 37 Ill.Dec. at 296, 402 N.E.2d at 186. Furthermore, courts have recognized that certain special circumstances sometimes allow a beneficiary to maintain a cause of action directly. As pointed out in *Bogert, Trusts & Trustees* § 869, at 92–94 (2d ed. 1982):

> If the trustee cannot or will not enforce the cause of action running to him for the benefit of the beneficiary, a practical difficulty arises which compels the courts to vary their usual rules as to parties. There is danger that the cause of action may be barred by laches or the operation of the Statute of Limitations, if the beneficiary is obliged to wait for the trustee to act, or is forced to sue the trustee to compel action, or to bring a proceeding for the removal of the trustee and the appointment of a successor. In addition, the financial condition of the third party may change so that all relief will be shut off. In the emergency the court permits a suit in equity by the beneficiary to enforce the cause of action running to the trustee, in which the third party and the trustee should be made parties defendant. The beneficiary is not enforcing his own cause of action, but is acting as a temporary representative of the trust in order to effect a recovery which will go to the trustee or his successor for the benefit of the beneficiary.

> If the trustee refuses to bring the action, after demand, or fails to act, or the trusteeship is vacant, or the trustee has been absent for many years, or the trustee has an adverse interest, or has conspired to defeat the trust, or the trustee is held to be estopped to sue the third party, the beneficiary may bring the action against the third person. The necessities of the

---

3. According to the provisions of the Trust, actions of the trustees are based on majority rule. Although one of three trustees, the plaintiff alleges that he is consistently out-voted by Patricia Letsinger and the Bank.

case entitle the beneficiary to proceed directly.

(Footnotes and citations omitted).

■ In light of these recognized exceptions, the court holds that, to the extent that plaintiff's claims against the Victor Buff officers and directors are premised on their knowing participation in the alleged breach of fiduciary duty by co-trustees Patricia Letsinger and the Bank, the plaintiff has standing to assert the claims.

■ The second plausible basis for plaintiff Edgeworth's claims against Victor Buff's officers and directors is that they have breached their fiduciary duties to the *corporation.* For these claims the plaintiff apparently seeks damages for the diminished value of Victor Buff stock attributable to their alleged breaches. Setting aside for a moment the problem that the plaintiff is not a legal shareholder of record in Victor Buff, another obstacle to these corporate claims exists. Hornbook corporations law precludes an individual shareholder from maintaining an action for wrongs affecting the whole body of the corporation's stock or property. Rather, a shareholder must seek recovery derivatively on behalf of the corporation (and its stockholders indirectly) pursuant to Fed.R. Civ.P. 23.1. *See, e.g., Atkins v. Tony Lama Co., Inc.,* 624 F.Supp. 250 (S.D.Ind. 1985). *See also Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707 (5th Cir.1984); *Lewis v. Knutson,* 699 F.2d 230 (5th Cir.1983); *Enterra Corp. v. SGS Assoc.,* 600 F.Supp. 678 (E.D.Pa.1985).[4]

Because there is no arguable basis upon which Myron Edgeworth can maintain these corporate claims individually, the court will assume that his assertions are in the nature of a shareholder's derivative suit, though not denominated as such. This analysis is likewise applicable to plaintiff's claims against Victor Oolitic and its officers and directors, as the suit seeks to assert a cause of action on behalf of Victor Buff. Though also not revealed in the complaint, the court infers that the plaintiff intends to bring these claims either as an individual shareholder of Victor Buff or on behalf of the Trust as a shareholder of Victor Buff.

Edgeworth's claims against Victor Buff and Victor Oolitic, and their respective officers and directors, even when construed as being brought by Edgeworth as an individual shareholder, present another significant problem. Plaintiff is not a legal owner of record of any stock in Victor Buff. To maintain a shareholder's derivative suit to enforce the rights of a corporation, a party must be a shareholder of record. *See generally* 7C C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1826 (2d ed. 1986). Edgeworth argues that his status as a one-half income beneficiary of the Trust, which is a legal shareholder of Victor Buff, makes him an equitable owner of Victor Buff and entitles him to assert his claims.

The defendants' arguments that plaintiff has no standing to assert claims against the corporations and their officers and directors is premised solely on the assumption that Mr. Edgeworth seeks to step into the position of the Trust and rely on the Trust's shareholder status to establish the requisite standing to sue derivatively. However, the arguments do not take into account the issue of whether Edgeworth, as an income beneficiary of the Trust, has the capacity as an individual shareholder to assert these claims. This distinction was specifically addressed in *Matthies v. Seymour Manufacturing Co.,* 270 F.2d 365, 375, 376–77 (2d Cir.1959), *cert. denied,* 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 544 (1960). Because the parties in this case have not addressed the issue, the court's analysis must proceed without the benefit of their arguments.

**4.** An individual action can be asserted when the wrong complained of is against the individual and not merely against the corporation and its shareholders generally. For example, in *Buschmann v. Professional Men's Ass'n,* 405 F.2d 659 (1969), the Seventh Circuit held that an individual shareholder, who alleged a wrong arising out of a contractual relationship between himself and the defendant, could maintain a personal action. This case, however, does not fall within those parameters.

■ In a diversity case like this one, the question of whether a plaintiff is a shareholder within the meaning of Fed.R.Civ.P. 23.1, in the Seventh Circuit, is a procedural question to be determined under federal law. *HFG Co. v. Pioneer Publishing Co.,* 162 F.2d 536 (7th Cir.1947).[5]

The issue as stated above—whether a beneficiary of a trust which holds stock in a corporation is himself a shareholder of that corporation within the meaning of Fed. R.Civ.P. 23.1—has apparently not been directly addressed in this circuit. In *Matthies,* 270 F.2d at 375, the Second Circuit held that one of many trust beneficiaries is not a shareholder of the corporation whose stock is held by the trust. That court based its ruling on the view that allowing beneficiaries to maintain such derivative actions would circumvent the purpose and effect of the rule in that jurisdiction requiring the joinder of all beneficiaries in actions aimed at preserving the trust corpus. *Id.*

Other courts addressing the issue, however, have held that the trust beneficiary has standing to maintain derivative claims. *See Pearce v. Superior Court of Kern County,* 149 Cal.App.3d 1058, 197 Cal.Rptr. 238 (1984) (applying California law). *See also In re Stewart's Estate,* 3 N.Y.S.2d 985, 167 Misc. 361 (1937).

■ This court finds the holding in *Matthies* unpersuasive in the context of this case for a number of reasons. First, the thrust of that court's decision was based on the requirement in Connecticut of joinder of all beneficiaries in actions based on trusts. Such a requirement is not at issue here. Second, the partial dissent in *Matthies* aptly distinguished between the standing of a shareholder and the standing of a trust beneficiary, a distinction apparently not recognized by the majority. Judge Waterman wrote:

> I do not find it necessary for Matthies to represent the trusts in the stockholder's

action, or to hold as does the court below that he could properly bring a class action for the trust beneficiaries. Nor do I agree with my colleagues that, whether he can do so or not in the state courts, he cannot do so in the U.S. District Court. This action is brought to recover losses the corporation allegedly wrongfully sustained through improper actions of its officers and directors. Whatever may be recovered on behalf of the corporation benefits the corporation's treasury, and does not result in adding to the funds of the trusts, or in adding to the funds of George Matthies, except as the value of the corporate stock in Seymour held by the trusts may be enhanced by success of the suit. Plaintiff sues on behalf of himself and all other *stockholders* of Seymour Manufacturing Company, not on behalf of himself and his fellow beneficiaries of the Matthies trusts.... Did George Matthies stand in the position of a shareholder of the Seymour Manufacturing Company at the time of the events alleged in his complaint to have taken place? My colleagues discuss that issue at the end of the majority opinion. They hold that a trust beneficiary in the position of George Matthies is not, within the meaning of Rule 23(b) a "shareholder" of a corporation whose corporate stock is held by the trustees of the trust, and hence he has no standing to so sue. I would hold the opposite. I do so on the opinion below, both because of the admirable presentation of the law on the point, but also for the sake of dissent brevity.

\* \* \* \* \* \*

I would hold that plaintiff has the right under Rule 23(b) solely by himself, as a "shareholder" within the meaning of that rule, to maintain this secondary action as a shareholder of Seymour, irrespective of any other of his relationships.

---

5. The Seventh Circuit has taken the minority view in holding the question of shareholder status for purposes of rule 23.1 a procedural (to be resolved by looking to federal law) rather than a substantive issue (to be resolved in a diversity case by looking to state law). This approach has been roundly criticized, *see, e.g.,*

3B Moore's *Federal Practice* ¶ 23.1.17 n. 14, and has been narrowly construed by a court in this circuit. *See Kreindler v. Marx,* 85 F.R.D. 612, 615 (N.D.Ill.1979). In any event, this court finds no authority to suggest that reliance on federal rather than state law would yield a different result in this case.

*Id.* at 376–77. (Emphasis in original.) As an additional reason for allowing a one-half income beneficiary of the Trust to maintain a derivative action, the court notes that the vast majority of courts addressing the issue have ruled that equitable, in addition to legal, owners of stock have standing to maintain a shareholder's derivative suit. *See, e.g., Weinhaus v. Gale,* 237 F.2d 197, 200 (7th Cir.1956) (citing *HFG Co. v. Pioneer Publishing Co.,* 162 F.2d 536 (7th Cir.1947)). *See also de Haas v. Empire Petroleum Co.,* 435 F.2d 1223 (10th Cir. 1970); *Hurt v. Cotton States Fertilizer Co.,* 145 F.2d 293 (5th Cir.1944), *cert. denied,* 324 U.S. 844, 65 S.Ct. 679, 89 L.Ed. 1406 (1945). Finally, the purpose of rule 23.1's requirement of stock ownership would be satisfied by deeming plaintiff Edgeworth a shareholder in this circumstance. The purpose of the requirement is to ensure that derivative actions be maintained by those with an incentive to pursue the claims faithfully and vigorously. Edgeworth, who by virtue of his status is presently entitled to approximately forty percent of Victor Buff's income, has such an incentive.

For all of these reasons, the court deems the plaintiff a shareholder of Victor Buff for the purposes of rule 23.1. The court cautions, however, that the scope of its decision is narrow and is confined to the facts of this case. The court is unwilling to conclude, for example, that income beneficiaries are always to be considered shareholders in the corporations in which their trusts hold stock. In this case, however, where the plaintiff receives one-half the income of a trust which owns almost eighty percent of a closely-held corporation, the equities embodied in rule 23.1 are best served by allowing him to proceed as a shareholder.[6]

▮ The defendants further argue that the plaintiff cannot maintain a derivative suit because of his failure to make a demand upon the corporation to bring suit, as required by Fed.R.Civ.P. 23.1. The plaintiff's complaint and other submissions outline with particularity the attempts made to induce his fellow directors and shareholders of Victor Buff to act on his complaints; alternatively, the facts and circumstances of this case indicate, primarily because the other directors themselves are defendants, that a formal demand would have been futile. Therefore, a consideration of the totality of the circumstances present in this case causes the court to conclude that the plaintiff's derivative claims should not be dismissed for failure to make a formal demand.

For all of these reasons, the plaintiff has standing to assert claims related to alleged underreporting against Victor Buff, Victor Oolitic, and their respective officers and directors.

As a final matter, the defendants argue that plaintiff lacks standing, in the constitutional sense, to complain of the defendants' failure to lease additional property to competitors of Victor Oolitic. In so arguing, they maintain that plaintiff has failed to show that Victor Buff has suffered an actionable injury that can be redressed in this action because he has not demonstrated that such a competitor was willing and able to lease Victor Buff property, that the directors knew of this opportunity and opposed or prevented it, and that there was no valid business judgment reason not to lease the land.

▮ The plaintiff has provided some evidence that at least one Victor Oolitic competitor was interested in leasing Victor Buff property. He has also provided some evidence that the directors knew of this interest. Although the evidence in support of this claim does not appear strong, the problem is not one of constitutional dimension. The failures recited by the defendants instead go to the merits of the plaintiff's claim and involve genuine issues of material fact. The defendant's motion on this issue is therefore denied.[7]

---

**6.** Having found standing on this basis, the court need not address separately the plaintiff's capacity to sue on behalf of the Trust as shareholder of Victor Buff.

**7.** The court cautions the plaintiff, however, that this claim may proceed only with regard to alleged failures to lease *additional* lands. The issue as it relates to the decision to enter the

*Failure to exhaust contractual remedy* [8]

The defendants maintain that plaintiff is not entitled to proceed with his suit based on alleged underreporting because he failed first to exhaust the remedy provided him in the lease between Victor Buff and Victor Oolitic. That section of the lease provides:

By notice given within 30 days prior to the end of a calendar year, any then current income beneficiary of the Michael J. Edgeworth Trust may direct Buff's auditor (or special auditor in the event that a special audit has been commenced within the meaning of paragraph six (6) of this Agreement) to retain and utilize the services of such qualified experts as the auditor reasonably requires, including a geologist who possesses appropriate expertise in quarrying operations, to estimate the limestone removed and sold from the Leased Premises during such calendar year in order to advise the Landlord as to the accuracy of Tenant's reports. The activities of such experts may not however, unreasonably restrict, limit or interfere with the quarry activities and business operations of Tenant. In connection with performing its duties, such expert(s) must review Tenant's records pertaining to the removal and sale of limestone from the Leased Premises, and Tenant shall cooperate with reasonable requests made of by the expert(s). The expert(s) shall make his report prior to April 1st of the following calendar year. The costs incurred in connection with such investigation shall be borne by the Landlord, provided however, that nothing herein contained shall limit the Landlord's ability to claim such costs as damages in the event of a subsequent litigated dispute between the Landlord and the Tenant pertaining to the royalties paid to Tenant by Landlord for the calendar year investigated. Copies of the expert's report shall be prompt-ly provided to the Landlord and the Tenant.

Exhaustion of remedies, a doctrine generally applied in the governmental administrative realm, has been applied, in certain instances, to private internal remedies. *See, e.g., United States Auto Club, Inc. v. Woodward*, 460 N.E.2d 1255 (Ind.Ct.App. 1984). The plaintiff has attempted to distinguish those decisions requiring exhaustion of internal remedies from this case. The court does, indeed, note some significant factual distinctions.

In any event, resolution of this issue does not depend on the presence of factual distinctions or exceptions to the rule as cited by the plaintiff. A more fundamental problem undermines the defendants' argument. The provision of the contract upon which the defendants rely does not create a *remedy;* it only establishes a *right.* The contract states that any current income beneficiary of the Trust, like Myron Edgeworth, may direct Victor Buff's auditor to retain an expert to estimate the limestone removed and sold from the leased premises and to advise Victor Buff as to the accuracy of Victor Oolitic's reports. The contract further provides that the cost of the expert investigation will be borne by Victor Buff, expressly stating that this provision will not limit Victor Buff's ability to claim such costs as damages in the event of subsequent litigation.

This contractual provision certainly does not rise to the level of a "remedy." A remedy is a procedure employed by which relief is obtained; it is the means of enforcing a right or redressing an injury. *See, e.g., State v. Judd*, 493 P.2d 604 (Utah 1972); *Kee v. Redlin*, 203 N.W.2d 423 (N.D.1972). The contract gives plaintiff, as an income beneficiary of the Trust, the right to direct Victor Buff's auditor to retain an expert to investigate Victor Oolitic's quarrying activity. However, if an expert investigation revealed gross un-

1985 lease with Victor Oolitic is foreclosed by the Illinois judgment.

**8.** The court presumes that this argument is directed only to the plaintiff's claims of underre-porting subsequent to the 1985 lease. Any underreporting during the "interim period" would, of course, not have been governed by the 1985 lease.

derreporting by Victor Oolitic, the contract creates no vehicle by which plaintiff Edgeworth can gain redress for the injury.

This obvious difference can be aptly illustrated by comparing the contractual provision at issue in this case with the provision at issue in *United States Auto Club, Inc. v. Woodward,* the case upon which the defendants principally rely. In *Woodward,* the plaintiff's attempt at qualification for the Indianapolis 500 was disallowed for nonconformity with certain engine specifications. USAC rules, which were expressly made a part of the contract in that case, provided for a formal protest of the disallowance, a hearing, and an appeal from the decision at the hearing. Had these mechanisms resulted in a ruling favorable to the plaintiff, the disallowance would have been eradicated; in other words, his alleged injury (wrongful disallowance) would have been remedied. There would have been no need for vindication in court. Such is not the case with the Victor Buff–Victor Oolitic lease. Indeed, the provision contemplates the possible necessity of litigation to recover for underreporting. For this reason, the court finds that the contract does not create an internal remedy in favor of the plaintiff that he was required to exhaust prior to filing suit.

The defendants also raise a contractual provision applicable to Victor Buff, rather than to the plaintiff, in claiming that the court lacks jurisdiction for failure to exhaust the contractual remedies. Section 6 of the parties' contract provides in pertinent part:

*Audit.* In the event Landlord, in good faith, is not satisfied with the quarterly statements submitted by Tenant pursuant to paragraph 3(d) of this Lease or any other annual records submitted by Tenant, Landlord shall have the right to have auditors make a special audit of all books and records, wherever located, pertaining to the amount of stone removed and sold from the Leased Premises, provided that such activities do not unreasonably restrict, limit or interfere with the quarrying activities and business operations of Tenant. If such statements are found to be incorrect to the extent of

more than Five Percent (5%) over the figures submitted by Tenant, Tenant shall pay for such audit, otherwise, the audit shall be at Landlord's expense. Tenant shall promptly pay to Landlord any deficiency, or Landlord shall promptly refund to Tenant any overpayment, as the case may be, which is established by such audit.

Arguably, this provision comes closer to providing a remedy than does the provision applicable to Myron Edgeworth, although it still differs significantly from the formal procedures set out by the contract in *Woodward.*

■ To the extent that plaintiff's claims against Victor Oolitic and its officers and directors are derivative, the defendants argue that "the plaintiff can seek no greater relief than Buff could seek, and Buff has failed to conduct the special audit designed to determine whether any deficiency existed in royalty payments." The court finds that this contractual provision does not bar plaintiff's claims for underreporting. First, this provision, although more like a remedy than the provision applicable to Myron Edgeworth, does not set out a formal mechanism for redress like that described in *Woodward.* More important, plaintiff's standing under Fed.R.Civ.P. 23.1 to assert claims against Victor Oolitic on behalf of Victor Buff is premised on Victor Buff's alleged failure to pursue its remedies against Victor Oolitic. To require Victor Buff to have exhausted this contractual "remedy" prior to a derivative action by an equitable shareholder is incongruous and would obviously defeat the purpose of the derivative suit.

### No underreporting by Victor Oolitic

■ As a final argument, the defendants maintain that they are entitled to judgment as a matter of law on the underreporting issue because there was, in fact, no underreporting by Victor Oolitic of its quarrying activity. In support of this argument, the defendants supply a critique of the two expert reports of underreporting supplied by the plaintiff. In general, the

defendants attack the qualifications of the expert and the methods employed in the study. Such is not the stuff of which summary judgments are made. Genuine issues of material fact remain regarding the validity of the parties' respective reports on the quarrying activity completed on Victor Buff's property. Issues of qualification, methodology, and credibility in general are matters to be resolved at trial. The defendants' motion on this issue is therefore denied.

*Summary of court's conclusions:*

1. The defendants' first motion for summary judgment is GRANTED. Paragraphs 13–15, 19, 23–27, 33–38, 46, 75–76, and 79–81 of the complaint are DISMISSED. The plaintiff is granted leave to amend his complaint, within twenty (20) days of the date of this entry, to plead with greater particularity claims described in his summary judgment papers that are in accordance with this entry and are not barred.

2. The court GRANTS the defendants' request for sanctions and awards John Edgeworth, Terrence Edgeworth, and Victor Oolitic the reasonable costs, attorney fees, and expenses incurred in the filing and support of their first motion for summary judgment. The plaintiff and his counsel shall each bear one-half of the sanction.

3. The defendants' second motion for summary judgment is DENIED.

a. The plaintiff has standing to assert claims against the co-trustees, Victor Buff, Victor Oolitic, and those corporations' respective officers and directors.

b. Contractual provisions in the 1985 lease between Victor Buff and Victor Oolitic do not preclude the plaintiff's claims for underreporting.

c. Genuine issues of material fact remain regarding Victor Oolitic's alleged underreporting of its quarrying activity on Victor Buff property.

4. The defendants' request for oral argument is DENIED.