In re HEARTHSIDE BAKING CO., INC., Debtor.

Official Unsecured Creditors' Committee of Hearthside Baking Co., Inc. and Wayne Cohen, individually and derivatively as President and beneficial owner of Hearthside Baking Co., Inc., d/b/a Maurice Lenell Cooky Company, Plaintiffs,

v.

Terry Cohen, Melvin Blum, Marvin Gordon, and Hearthside Baking Co., Inc., d/b/a Maurice Lenell Cooky Company, Defendants.

Official Unsecured Creditors' Committee of Hearthside Baking Co., Inc., ex rel. Hearthside Baking Co., Inc., Plaintiff,

v.

Terry Cohen, Wayne Cohen, Andee Cohen Kochavi, Shimon Kochavi, Florence Barton, Miriam Cohen, Tewaan Corp., Melvin Blum, and Marvin Gordon, Defendants.

Bankruptcy No. 08 B 01187.
Adversary Nos. 08 A 00237, 08 A 00279.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 27, 2009.

Joseph D. Frank, Jeremy C. Kleinman, and Micah R. Krohn of Frank/Gecker LLP, for the Creditors' Committee.

Stephen Scallan and Michael B. Cohen of Staes & Scallan PC, for Wayne Cohen.

Joseph P. Kincaid and Thomas J. Verticchio of Swanson, Martin & Bell, LLP, for Terry Cohen.

Stephen Novack, Monte L. Mann, and Julie Johnston–Ahlen of Novack and Macey LLP, for Melvin Blum.

David E. Gordon of David E. Gordon & Associates, for Marvin Gordon.

William T. Neary, U.S. Trustee.

### *MEMORANDUM OPINION*

JACQUELINE P. COX, Bankruptcy Judge.

In this matter, defendants, Melvin Blum ("Blum"), Marvin Gordon ("Gordon") (together, the "Co–Trustees")[1], seek to dismiss both Wayne Cohen's Third Amended Complaint ("Wayne's Complaint") as directed toward them and Counts II and LX of the amended complaint (the "Commit-

---

1. The term "Co–Trustees" employed here is used because defendants Blum and Gordon are trustees of the Irwin Cohen Trust, as will be explained in the opinion, and not trustees of the debtor's bankruptcy estate.

tee's Complaint") filed by the Official Unsecured Creditors' Committee of Hearthside Baking Co., Inc. (the "Committee") pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012. Defendant Terry Cohen ("Terry") seeks to dismiss the eighteen counts in Wayne's Complaint that relate to him. Wayne Cohen ("Wayne") moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, on Counts XIV–XIX and XXI of the Committee's Complaint, and to strike paragraph 65 of the Committee's Complaint. Count XII of Wayne's Complaint is not challenged by either motion to dismiss.[2] Based on the foregoing, the Co–Trustee's motion to dismiss Wayne's Complaint as it relates to them is granted in part and denied in part; their motion to dismiss Counts II and LX of the Committee's Complaint is denied. Terry's motion to dismiss Wayne's Complaint as it relates to him is granted in part and denied in part. Wayne's motion for judgment on the pleadings and to strike paragraph 65 of the Committee's Complaint is denied.

## I. JURISDICTION

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. These matters are core proceedings under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (H) and (O).

2. Count XII is titled "Accounting Claim on Behalf of Wayne Cohen Trust Beneficiary" and seeks an accounting of the "Trust" (this count probably seeks relief as to the Irwin Cohen Trust.)

## II. BACKGROUND [3]

The following background is taken as true for purposes of this motion. Before it was placed into bankruptcy, the Debtor, Hearthside Baking Co., Inc. ("Hearthside"), an Illinois corporation, manufactured and sold cookies as the Maurice Lenell Cooky Company since its founding by the Lenell family in 1937. The cookies are well-known in the Chicago area. Irwin Cohen ("Irwin") acquired Hearthside in 1987 and began operating the company. When Irwin took control of Hearthside, most of its business was in the Chicago market where the cookies were sold in local grocery stores. By 2007, the cookies were sold throughout North America, primarily in stores such as Walgreens and Wal–Mart.

Prior to his death in June 1997, Irwin owned 87.5% of the shares of the company. The other shares were owned by Lisa Lenell ("Lenell"). Irwin was the sole director of Hearthside. On August 4, 1993, Irwin created a trust, The Irwin Cohen Trust (the "Trust"), consisting of, *inter alia*, Irwin's share of the company, and it named Irwin's three children, Terry, Wayne, and Andee Cohen Kochavi ("Andee"), as the trust's beneficiaries. Terry was Hearthside's Chief Executive Officer and Wayne was its President. Blum and Gordon were appointed the as Trust's trustees. Blum is an attorney licensed to practice law in Illinois.

The Trust provided, that upon the death of Irwin, the Co–Trustees would retain control of the voting stock of Hearthside and that they would have the power "to ... prosecute ... claims in favor of or against the trust," and to "perform other

3. The following is taken from Wayne's Complaint and the Committee's Complaint. Any difference in fact allegations will be noted.

acts necessary or appropriate for the proper administration of the [T]rust." (Irwin Cohen Trust Dated August 4, 1993, Wayne Cohen's Amended Compl., Case No. 08–AP–00237 [Dkt. No. 71], Ex. 1, Sec. 5, pg. 18–20, ¶¶ (h) and (n)). The Trust also authorized the Co–Trustees to elect directors and shareholders and, in their discretion, to retain any common stock for at least twenty-five years. Further, the Trust required that all claims against the estate of Irwin be paid from the Trust's principal; that the Co–Trustees purchase an annuity using the principal of the Trust to pay Florence Barton ("Barton"), Irwin's former wife and the mother of Terry, Wayne, and Andee, $25,000 per year; and that the Co–Trustees set aside the common shares of Hearthside in a separate trust designated the "Cohen/Hearthside Trust." The Cohen/Hearthside Trust was never created.

In 1991, Hearthside purchased a condominium in North Miami Beach Florida for $450,000.00. The Committee alleges that Barton ("Barton") resides at this condominium for a portion of each year. Hearthside pays the expenses related to ownership of this property including utility charges, mortgage payments, assessments, and taxes.

In 1994, Irwin incorporated Tewaan Corp., an Illinois corporation ("Tewaan"). In December 1994, Hearthside transferred real estate consisting of the land and building in which Hearthside operated to Tewaan. After the transfer, Hearthside began paying rent to Tewaan. Terry, Wayne, and Andee are the shareholders and officers of Tewaan.

After Irwin died in 1997, the Co–Trustees elected Wayne and Terry as the sole directors of Hearthside; they continued their roles as officers of the company. Shortly after Irwin's death, Lisa Lenell sold her 12.5% ownership interest in Hearthside to Merit Collection Agency, Inc., an affiliate company of Hearthside, essentially giving the Trust 100% ownership of Hearthside. As provided by the Trust, the Co–Trustees retained control over the voting shares of Hearthside.

There are several alleged misappropriations of Hearthside's funds, many beginning before Irwin's death in 1997. In the years before his death, Irwin borrowed $3,356,470 from Hearthside. This money was never reimbursed to Hearthside out of the Trust's principal as required by the language of the Trust. Several other transfers made within the year preceding Hearthside's bankruptcy are alleged to be improper. In addition to his regular salary, Wayne received from Hearthside $122,186.80 that included $3,610.80 for what was listed as a "medical reimbursement" and $118,576.00 for "repayment of loan with interest." The Cohens' mother, Barton, also received paychecks from Hearthside between March 31, 2007 and January 17, 2008 totaling $27,611.72 and an additional check for $847.79. Barton is not an employee, officer, or director of Hearthside. Between March 31, 2007 and January 17, 2008, Andee received paychecks totaling $16,297.04 and a "medical reimbursement" for $4,42417. In July 2007, the Co–Trustees appointed Andee to Hearthside's board of directors. Prior to this appointment, Andee was not employed by or otherwise involved with the operations of Hearthside. Wayne alleges that Andee was appointed as a director of Hearthside because she could be easily influenced by Terry. When Andee was appointed to Hearthside's board of directors, Hearthside hired Andee's husband, Shimon Kochavi ("Shimon") and issued him weekly paychecks between July 12, 2007 and December 20, 2007 totaling $48,077.00. In addition, Hearthside also paid a medical bill for Shimon for $1,396.62

on October 3, 2007 and made two unidentified payments to him: $4,000.00 on April 12, 2007 and $12,000.00 on May 21, 2007.

Perhaps the most shocking allegations are those involving Terry's alleged misappropriations totaling over $2 million of Hearthside funds. Between June 1, 1995 and June 1, 1997, those allegations are that Terry used Hearthside funds totaling $93,000 for the construction of his home and beginning June 2, 1997 through December 31, 2007, Terry spent another $700,000 of Hearthside funds on his home. This included the home's construction, decorative paintings, landscape illumination, photosensitive window tinting and numerous pieces of furniture. It is also alleged that Terry used Hearthside funds for personal expenses beginning in 1997. These include multiple non-business meals per week, cable television bills for his residence, gasoline for his personal vehicle, and expenses for his family's cellular phone usage. During the same time period, Terry is alleged to have spent approximately $50,000 of Hearthside funds on entertainment expenses including hockey and entertainment event tickets, golf equipment, golf course fees, massages, bathhouse visits, hockey equipment, designer clothing, and cigars. Terry is also alleged to have used Hearthside funds to pay for motor vehicles. From April 26, 1999 through April, 2002, Terry allegedly used Hearthside funds to make lease payments on a Bentley vehicle totaling $115,039.00; for a Mercedes–Benz vehicle between 2002 and 2004 totaling $62,522.00; a Ford vehicle between January, 2002 and October, 2004 totaling $37,294.65; a General Motors vehicle from June 25, 2005 through June, 2006 totaling $14,789.68; a BMW vehicle from February 10, 2005 through June,

2005 totaling $36,555.50; and a Porsche vehicle from January, 2006 through May, 2006 totaling $15,271.45.[4] Terry also allegedly spent Hearthside funds in excess of $100,000 on personal vacations for himself and his family including three trips to Hawaii, two trips to Mexico, four trips to Europe, a trip to Russia, trips to Aruba and Anguilla, and at least two cruises. Perhaps telling of how Terry allegedly perpetrated his misappropriations is how he used $40,000 of Hearthside funds to pay for his daughter's bat mitzvah. Here, he is alleged to have paid an event coordinator $14,600 and referenced the invoices as "Vender, Employee and Customer Appreciation Party." There were other misappropriations. Terry allegedly purchased a life insurance policy in 1997 and made premium payments on the policy using Hearthside funds totaling $373,457.00. Between 2000 and 2003, Terry is alleged to have misappropriated an additional $65,000 in cash from Hearthside and used Hearthside funds to pay Blum $52,000 for legal fees for matters handled by Aronberg Goldgehn Davis & Garmisa, Blum's law firm, for representation unrelated to Hearthside's operations.

Terry's acts may not have gone unnoticed by others at Hearthside. Wayne's assessment follows. In 2000, Wayne notified the Co–Trustees that Terry had misappropriated Hearthside funds for the construction of his home. Between 2001 and 2003, Wayne claims to have made numerous attempts to notify the Co–Trustees of Terry's conduct. According to Wayne's Complaint, at a meeting attended by Gordon and Terry in early 2001, Wayne discussed Terry's misappropriations. In October, 2001, Wayne discussed the matter with Blum who promised to investigate the

---

**4.** The Court notes that many of the alleged misappropriations occurred while the Chancery Court action was pending in which Terry was accused of similar conduct on earlier occasions.

matter. Later, in June, 2003, Wayne discussed the subject with Gordon, who revealed to Wayne Terry's misappropriations regarding Terry's daughter's bat mitzvah. Wayne later learned that Terry directed Hearthside's comptroller to bury the expense so deep in the books, nobody would find it, or risk losing his job. In September, 2003, Wayne went to Blum's office in Chicago and presented him additional evidence of Terry's misconduct. On January 21, 2004, Wayne showed Blum a detailed itemization of misappropriations by Terry created by Hearthside's comptroller totaling $750,000. Blum responded by attempting to minimize Terry's misappropriations by stating that only $623,707.73— not $750,000—went into the construction of Terry's home and warned Wayne that he could bankrupt the company with this, by disclosing evidence of the misappropriations. On January 29, 2004, Blum demanded that Wayne sign a conflict of interest waiver before they would take any action in connection with Terry's alleged misappropriations. The Co–Trustees then agreed to commence an investigation for what they referred to as "Wayne issues" and strictly limited the investigation to a three-week period of time. The Co–Trustees further stated that their role in the investigation would be minimal and that it should be conducted by Wayne and Terry. On February 19, 2004, Wayne conducted his own investigation and presented a breakdown of Terry's misappropriations. This breakdown was amended April 5, 2004 to add more misappropriations. Wayne also presented the Co–Trustees with documentation supporting evidence of the misappropriations.

On March 8, 2005, Wayne filed a shareholder's derivative lawsuit in the Chancery Division of the Circuit Court of Cook County, Illinois. The lawsuit sought removal of Terry as a director of Hearthside and $1 million in damages. The lawsuit also named the Co–Trustees as defendants alleging breach of fiduciary duty and civil conspiracy by Terry and the Co–Trustees. On June 3, 2005, Terry asserted an election to purchase Wayne's interest in Hearthside pursuant to 805 ILL. COMP. STAT. 5/12.56.[5] This required the Chancery Court to conduct a hearing to determine the value of Wayne's interest. As a result of the valuation proceedings, the underlying action was stayed on March 14, 2006 until the outcome of the hearing. In the fall of 2006, Terry is alleged to have informed Hearthside's employees that he was buying Wayne's interest in the company and ordered them not to follow Wayne's directions. On November 22, 2006, Terry sought to remove Wayne in the Chancery Court action as a director and officer because of the pending buy-out action. On July 23, 2007, Terry successfully moved to continue the valuation proceeding pending the sale of real estate by Tewaan. Subsequently, at the November 20, 2007 Hearthside board meeting, Terry moved to cease Hearthside's operations by the end of 2007 and hire a business broker to sell the business. Wayne opposed this effort, causing a deadlock among the board's directors, resulting in the Co–Trustees appointing Andee to the board, allegedly to break the deadlock. On December 17, 2007, Terry and Andee called a board meeting to remove Wayne as President. Wayne claims to have reported this event to the Co–Trustees who refused to act. Wayne then successfully sought a prelimi-

---

5. This allows a closely held corporation or its shareholders to elect to purchase a shareholder's shares in lieu of dissolution of the corporation. 805 ILL. COMP. STAT. 5/12.56(f); *see also*

*Lohr v. Havens,* 377 Ill.App.3d 233, 316 Ill. Dec. 319, 879 N.E.2d 386, 389 (2007) (citing statute.)

nary injunction from the Chancery Court preventing his removal. Wayne believes the sale of Hearthside was designed so that Terry could then purchase the company at a discounted price, extinguish Wayne's claims through an assignment for the benefit of creditors sale, and not pay Hearthside's trade creditors. Wayne also alleges that Terry chose this route to avoid accounting for his misconduct at the valuation hearing. The valuation hearing was never conducted.

Four of Hearthside's creditors filed an involuntary petition seeking chapter 7 relief under the Bankruptcy Code on January 18, 2008. The case was later converted to a chapter 11 proceeding on February 13, 2008. On March 28, 2008, the Committee was formed and was given authority to intervene on behalf of Hearthside and to prosecute claims on behalf of the bankruptcy estate in the Chancery Court action. Under this authority, the Committee removed the Chancery Court action to this Court and filed its own adversary proceeding. In a memorandum opinion dated August 4, 2008, this Court denied Terry and the Co–Trustees' effort to have this Court abstain from this case and remand it back to the Chancery Court; this Court consolidated the removed action initially filed by Wayne with the Committee's adversary complaint. *See In re Hearthside Baking Co., Inc.,* 391 B.R. 807 (Bankr.N.D.Ill. 2008).[6] Wayne was then allowed to amend his complaint; he added several RICO claims to his complaint. The Committee also amended its complaint. The Co–Trustees then filed a motion to dismiss Counts V–VIII, XI, XVI–XXIII, and XXIX–XXX of Wayne's Complaint and

Count II and LX of the Committee's Complaint. Terry moved to dismiss Counts I–IV, IX–XI, XIII–XV, XXIV–XXXI of Wayne's Complaint. Wayne moved for judgment on the pleadings on the matters involving him in the Committee's complaint. These three motions are the subject matter of this opinion.

## III. APPLICABLE STANDARDS

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012, requires that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007). The complaint must give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 553–54, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (ellipsis in original). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do." *Id.* at 1964–65. "Plaintiffs need not plead facts ... but they must give enough detail to illuminate the nature of the claims and allow defendants to respond." *George v. Smith,* 507 F.3d 605, 608 (7th Cir.2007) (citations omitted). When considering a motion to dismiss, the Court takes "as true all well-pleaded factual allegations in the complaint and make[s] all plausible inferences from those allegations in the plaintiffs' favor." *Levy v. Pappas,* 510 F.3d 755, 764 (7th Cir.2007). "[A] plaintiff is not required to anticipate and

---

**6.** The District Court subsequently denied two motions aimed at challenging this opinion. *See Official Unsecured Creditors' Comm. of Hearthside Baking Co. v. Cohen et al.,* Case No. 08–CV–02929 [Dkt. No. 50] (denying Wayne's motion to withdraw the reference);

*Blum et al. v. Unsecured Creditors' Comm. of Hearthside Baking Co. et al.,* Case No. 08–CV–05672 [Dkt. No. 33] (denying Co–Trustees' motion for leave to file an interlocutory appeal of this Court's August 4, 2008 opinion).

refute defenses in his complaint[.]" *Limestone Dev. Corp. v. Vill. of Lemont, Ill.,* 520 F.3d 797, 802 (7th Cir.2008). However, "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense[.]" *U.S. Gypsum Co. v. Ind. Gas Co., Inc.,* 350 F.3d 623, 626 (7th Cir.2003).

A Rule 12(c) motion for judgment on the pleadings is considered under the same standard as a Rule 12(b)(6) motion to dismiss. *Midwest Gas Servs. v. Ind. Gas Co.,* 317 F.3d 703, 709 (7th Cir.2003). Either motion should be granted if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir.1998) (quoting *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989)). In deciding a Rule 12(c) motion, all well-pled allegations are considered true and all reasonable inferences are drawn in favor of the plaintiff. *Midwest Gas Servs.,* 317 F.3d at 709.

Allegations of fraud must be pled in conformance with Fed.R.Civ.P. 9(b), made applicable by Fed.R.Bankr.P. 7009. *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir.2007). Rule 9(b) requires, "[i]n averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (quoting Fed.R.Civ.P. 9(b)). This requirement guarantees that defendants have fair notice of plaintiffs' claims and grounds, allowing defendants a proper opportunity to frame their answers and defenses. *Reshal Associates, Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226, 1230 (N.D.Ill.1990). A quotation from a statute will not suffice under Rule 9(b); fair notice requires facts supporting allegations. *Borsellino,* 477 F.3d at 507. Allegations pled on "information and belief" do not comply with the specificity requirement unless those allegations are accompanied by a statement of fact providing a basis for that belief. *Interlease Aviation Investors II v. Vanguard Airlines, Inc.,* 254 F.Supp.2d 1028, 1040 (N.D.Ill.2003).

## IV. DISCUSSION

The complaints share common factual allegations. Like the Committee's Complaint, Wayne's Complaint focuses on breaches of fiduciary duty by Terry and the Co–Trustees but differs as it also posits a claim for civil conspiracy and a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 1961 U.S.C. § 1961 *et seq.* The Committee's Complaint seeks relief against Terry, Wayne, Andee, Shimon, Barton, Miriam Cohen ("Miriam"), Tewaan, Blum, and Gordon for: (1) breach of fiduciary duty; (2) avoidance and recovery of fraudulent transfers pursuant to 740 ILL. COMP. STAT. 160/5(a)(1) and (a)(2), 740 ILL. COMP. STAT. 160/6(a) and (b) and 11 U.S.C. §§ 544, 548(a)(1)(A), 548(a)(1)(B) and 550(a); (3) avoidance and recovery of preferential transfers pursuant to 11 U.S.C. §§ 547(b) and 550(a); (4) avoidance and recovery of unauthorized postpetition transfers pursuant to 11 U.S.C. §§ 549 and 550(a); (5) unjust enrichment; and (6) disallowance of claims pursuant to 11 U.S.C. § 502(d). Together the Co–Trustees and Terry seek to dismiss the entirety of Wayne's Complaint;[7] the Co–Trustees seek to dismiss Counts II and LX of the Committee's Complaint.

### A. Fiduciary Duty

 Wayne's Complaint alleges breach of fiduciary duty against the Co–Trustees. Count II of the Committee's Complaint also seeks relief for breach of

---

**7.** Except the request for an accounting contained in Count XII as noted *supra* note 2.

fiduciary duty against the Co–Trustees. In Illinois, the elements of breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) that the duty was breached; and (3) that damages were proximately caused by the breach. *Autotech Tech. L.P. v. Automationdirect.com,* 471 F.3d 745, 748 (7th Cir.2006); *Neade v. Portes,* 193 Ill.2d 433, 250 Ill.Dec. 733, 739 N.E.2d 496, 502 (Ill.2000). A fiduciary duty may be created expressly; however, special circumstances also can give rise to a fiduciary duty. *Autotech Tech.,* 471 F.3d at 749 (citing *Crichton v. Golden Rule Ins. Co.,* 358 Ill.App.3d 1137, 295 Ill.Dec. 393, 832 N.E.2d 843, 854 (2005)). Certain relationships between parties constitute fiduciary relationships as a matter of law. *Id.* Officers and directors owe a fiduciary duty to their corporation. *In re Dearborn Process Service, Inc.,* 149 B.R. 872, 880 (Bankr. N.D.Ill.1993) (citing *Paulman v. Kritzer,* 230 N.E.2d 262, 38 Ill.2d 101 (Ill.1967) and *Unichem Corp. v. Gurtler,* 148 Ill.App.3d 284, 101 Ill.Dec. 400, 498 N.E.2d 724 (1986)); *see also Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 84 L.Ed. 281 (1939) ("A director is a fiduciary."). A trustee owes a trust's beneficiary a fiduciary duty and must carry out the trust according to its terms and "act with the highest degrees of fidelity and utmost good faith." *Giagnorio v. Emmett C. Torkelson Trust,* 292 Ill.App.3d 318, 226 Ill.Dec. 693, 686 N.E.2d 42, 46 (1997). The trustee owes a fiduciary duty to serve in the beneficiary's interest with total loyalty and without self-interest, and is prohibited from dealing with the trust's property for the trustee's personal interest. *Id.* Under the special circumstances test, a fiduciary relationship may arise "where one party places trust in another so that the latter gains superiority and influence over the former." *Crichton,* 295 Ill.Dec. 393, 832 N.E.2d at 854. The factors to consider under the special circumstances test in-

clude "the degree of kinship between the parties; the disparity in age, health, mental condition, education, *and business experience between the parties; and the extent to which the servient party entrusted his business affairs to the dominant party and placed trust and confidence in it.*" *Autotech Tech.,* 471 F.3d at 749 (citing *Crichton,* 295 Ill.Dec. 393, 832 N.E.2d at 854) (emphasis added).

1. *Breach of Fiduciary Duty Allegations Against Melvin Blum and Marvin Gordon*

■ In this case, the Co–Trustees certainly owed a fiduciary duty to Wayne based on the express trust and under the special circumstances test. The Trust names Wayne as a beneficiary and the Co–Trustees as the trustees of the Trust. Under the principles elicited in *Giangorio,* the Co–Trustees owe Wayne a fiduciary duty as a matter of law. Further, several factors in the special circumstances test justify finding a fiduciary duty. Wayne was justified in initially entrusting his business affairs regarding Hearthside to the Co–Trustees. Although they were neither shareholders, directors, officers, nor employees of Hearthside, the Co–Trustees wielded tremendous power regarding Hearthside's business affairs. Pursuant to the trust instrument, they controlled the voting stock and had the power to appoint and remove Hearthside's directors and officers. Wayne, as Hearthside's President, was a servient party to the Co–Trustees. The Co–Trustees clearly owed their beneficiary Wayne a fiduciary duty.

■ Additionally, the Co–Trustees argue that they owe no fiduciary duty to Hearthside since the Trust essentially owns 100% of the stock of Hearthside and Hearthside is not a trust beneficiary. A sole shareholder does not owe a fiduciary duty against its own corporation and can-

not breach a fiduciary duty to itself. *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 428 (7th Cir.2007). The Co–Trustees' position is not supported by this authority. This is not a shareholder suing itself here. Instead, an additional party, Wayne as a beneficiary, has concerns, which if true, are actionable. The Committee, standing in the shoes of the Debtor, is suing the Co–Trustees as individuals, not as shareholders of Hearthside. Although the Co–Trustees are not officers, directors, or employees of Hearthside, they still owed a fiduciary duty to Hearthside because of their authority to appoint and remove directors and officers on Hearthside's behalf. A fiduciary duty can be found where an insider "exercises the operating control of the business." *Aluminum Mills Corp. v. Citicorp N. America, Inc.*, 132 B.R. 869, 895 (Bankr.N.D.Ill. 1991); *see also Anest v. Audino*, 332 Ill. App.3d 468, 265 Ill.Dec. 840, 773 N.E.2d 202, 209 (2002) (citing *Kerrigan v. Unity Sav. Ass'n*, 317 N.E.2d 39, 43, 58 Ill.2d 20 (Ill.1974)) (stating "Individuals who control corporations owe a fiduciary duty to their corporations and their shareholders"). Factors indicating that one assumed the role of a corporate fiduciary include making decisions concerning the termination of employees and executives and releasing claims. *Aluminum Mills*, 132 B.R. at 895. In its complaint, the Committee alleges that the Co–Trustees had the power, via the Trust, to form the board of directors; participated in board meetings; failed to repay to Hearthside Irwin's debt out of the trust *res* upon the death of Irwin;[8] and exercised sole control of the voting shares

of Hearthside. If these assertions are true, the Co–Trustees clearly exercised control over Hearthside by making decisions that a corporate fiduciary would ordinarily make.

The Co–Trustees focus their argument on the third element, causation. They do not address whether they breached their fiduciary duty. The Co–Trustees aver that Wayne's Complaint must be dismissed as to them because Wayne failed to show how he was injured by the Co–Trustees and that the doctrine of mitigation precludes recovery from Wayne. According to the Co–Trustees, Wayne cannot bring an action against the Co–Trustees because he was aware of Terry's alleged misconduct in 2001. Although they acknowledge that Wayne brought the misconduct to their attention, they state they are free from liability because, according to the Co–Trustees, Wayne did nothing about the matter until he filed his suit in the Chancery Court in 2005. The Co–Trustees further argue that any action or inaction by them resulted in no injury to Wayne or Hearthside. They place the blame for injury squarely on Terry and state "[a]fter all, it was *Terry*—not the Co–Trustees—who allegedly looted Hearthside." (Co–Trustees' Memo. in Support of Their Mot. to Dismiss as to Them in Wayne Cohen's Third Amended Compl., Case No. 08–AP–00237 [Dkt. No. 81], pg. 5) (emphasis in original).

However, the Co–Trustees ignore that they in fact owed a fiduciary duty to Wayne, a trust beneficiary, both as a mat-

---

8. The Co–Trustees argue that the Committee did not include allegations pertaining to the repayment of the Irwin debt in Count II of its complaint. (Co–Trustees' Reply Brief in Further Support of Their Mot. to Dismiss Counts II and LX of the Adv. Compl. Filed by the Cred. Comm., Case No. 08–AP–00237, [Dkt. No. 149], pg. 4). However, the Committee made allegations concerning the Co–Trustees' failure to satisfy Irwin's debt per the Trust in paragraphs 44–46 of their complaint. (Comm. Amended Adv. Compl., Case No. 08–AP–00237 [Dkt. No. 95], pg. 8, ¶¶ 44–46) Count II repeats and realleges the allegations contained in paragraphs 1–91 of the complaint. *Id.* at pg. 15, ¶ 92.

ter of law as trustees of the Trust, and under the special circumstances test. Pursuant to this duty, the Co–Trustees were required to "serve the interest of the beneficiaries with total loyalty, excluding all self-interest, and [were] prohibited from dealing with the trust's property for [the Co–Trustees'] individual benefit." *Giagnorio*, 226 Ill.Dec. 693, 686 N.E.2d at 46. Here, as pled by Wayne, they ignored a myriad of complaints by Wayne of possible misconduct by Terry. On multiple occasions, Wayne gave the Co–Trustees, meeting with them both individually and together, ample evidence of possible defalcations by Terry. Instead of investigating and acting upon the information, the Co–Trustees failed to act despite assuring Wayne that they would do so. Although Wayne had the ability to act on Terry's alleged misconduct, the Co–Trustees had a *duty* to do so. Wayne's reliance on the Co–Trustees' duty and abilities seems reasonable since they had the power to remove Terry, a power that Wayne did not have. Therefore, Wayne did not fail to mitigate his damages. He may have taken reasonable steps to rectify the situation by relying upon the Co–Trustees' assurances that they would investigate the matter until he realized that this route was futile and he was forced to commence litigation against his brother. The allegations show that the Co–Trustees "assume[d] the position of an ostrich with its head in the sand and ignore[d] facts which were readily available" to them. *See In re Blatz*, 37 B.R. 401, 404–05 (Bankr.Wis. 1984) (quoting *In re Yeiser*, 2 B.R. 98, 101 (Bankr.Tenn.1979)). By taking this proverbial ostrich-in-the-sand approach, and allegations that Blum received Hearthside funds for legal work unrelated to Hearthside, it is properly alleged that the Co–Trustees breached their fiduciary duty to Wayne.

The Co–Trustees argue that if they breached their fiduciary duty to either Wayne or Hearthside, they should be dismissed from both complaints because neither Wayne nor Hearthside were damaged by the Co–Trustees. The Co–Trustees rely on *Webb v. Damisch*, 362 Ill. App.3d 1032, 299 Ill.Dec. 401, 842 N.E.2d 140 (2005). The plaintiffs in *Webb* filed a legal malpractice claim against their former attorney in an automobile accident case. *Webb*, 299 Ill.Dec. 401, 842 N.E.2d at 143. The former attorney did not file a strict liability claim against the automobile manufacturer. *Id.* Subsequently, that attorney ended his representation of the plaintiffs. *Id.* The plaintiffs obtained other counsel thereafter who brought a claim for strict liability against the automobile manufacturer. *Id.* After settling with the automobile manufacturer, the plaintiffs filed a legal malpractice action against their former attorney for not pursuing a strict liability claim against the manufacturer. *Id.* at 144. The *Webb* Court dismissed the legal malpractice claim because the plaintiffs were able to pursue their strict liability claims against the manufacturer through the other attorney and settled the case for what the plaintiffs referred to as a "fair and reasonable" amount. *Id.* at 149.

The Co–Trustees' reliance on *Webb* is misplaced. *Webb* involves an action for legal malpractice, not for breach of fiduciary duty. Even though both causes of action involve a causation element, causation is different in a legal malpractice case. To show causation in legal malpractice, one must show that "but for the attorneys' malpractice, the clients would have been successful in the undertaking the attorneys were retained to perform." *Id.* at 147–48. To satisfy the causation element for a breach of fiduciary duty, one only needs to show that damages proximately

resulted from the breach. *Autotech Tech.*, 471 F.3d at 748.

Further, Wayne pled damages from the allegations against the Co–Trustees. The Seventh Circuit has noted the vulnerabilities present in close corporations:

> Generally, imposing a fiduciary duty on shareholders in a close corporation shields minority shareholders from oppressive conduct by the majority. Shareholders in close corporations have often invested a "substantial percentage" of their assets in the corporation, and their position in the corporation may provide them with their only source of income. Minority shareholders are vulnerable to "freeze-outs" or "squeeze-outs," where the majority, for personal rather than legitimate business reasons, deprives the minority shareholder of his office, employment, and salary.

*Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 (7th Cir.1995) (internal citation omitted). Although *Rexford Rand Corp.* dealt with fiduciary duties amongst shareholders in a close corporation, the same vulnerabilities to injury are present in the instant case. Wayne properly pled that he holds a beneficiary interest in the Trust whose trust *res* is partially made up of all of Hearthside's voting and non-voting stock. Wayne also pled that the Co–Trustees' failure to act resulted in continued looting by Terry of the company and that they improperly acted with Terry to remove Wayne from any position of power within the company and his employment as President of Hearthside. Wayne has adequately pled damages caused by the Co–Trustees' breach of fiduciary duty.

▮ Similarly, Hearthside was injured by the Co–Trustees' alleged breach of fiduciary duty. In Illinois, a fiduciary owes a corporation the duty of "undivided, unselfish, and unqualified loyalty, of unceasing effort never to profit personally at corporate expense, of unbending disavowal of any opportunity which would permit the fiduciary's private interests to clash with those of [the] corporation." *Patient Care Servs., S.C. v. Segal*, 337 N.E.2d 471, 478, 32 Ill.App.3d 1021 (1975); *see also Rexford Rand Corp.*, 58 F.3d at 1218–19 (recognizing under Illinois law that a corporate fiduciary owes a duty of loyalty to the corporation). In this case, the Committee alleged that the Co–Trustees repeatedly ignored requests by Wayne to investigate alleged misconduct by Terry. Additionally, it is alleged that Blum received attorney fees from Hearthside for disputes stemming from the construction of Terry's personal residence. By failing to investigate Wayne's claims, Hearthside could have been injured by Terry's continued acts. The Co–Trustees had the power and the ability to stop Terry's actions, which did not cease after Wayne's reports of misconduct to the Co–Trustees. Moreover, Terry's alleged use of Hearthside money to pay Blum for legal fees relating to a personal matter may have injured Hearthside. The Committee's Complaint adequately pleads damages.

2. *Determination of Proper Standing to Bring Breach of Fiduciary Duty Claims Against Melvin Blum, Marvin Gordon, and Terry Cohen*

Terry does not dispute that he owed a fiduciary duty to Hearthside. Instead, he urges dismissal of the counts in Wayne's Complaint alleging breach of fiduciary duty based on improper standing by Wayne. The Co–Trustees make the same argument regarding the counts in Wayne's Complaint alleging breach of fiduciary duty.

▮ The Co–Trustees argue that Wayne lacks standing because he is not a shareholder of Hearthside; the Trust is the sole shareholder. In Illinois, the trus-

tee of a trust, and not the beneficiary, generally has standing to assert the rights of the trust. *See, e.g., Madden v. University Club of Evanston,* 97 Ill.App.3d 330, 52 Ill.Dec. 963, 422 N.E.2d 1172 (1981). However, if a trustee fails to bring an action or refuses to do so after a demand by the beneficiary, the beneficiary will have equitable standing to assert those claims. *See Edgeworth v. First Nat'l Bank of Chicago,* 677 F.Supp. 982, 991–92 (S.D.Ind.1988) (applying Illinois trusts law); *see also, e.g., Housman v. Albright,* 368 Ill.App.3d 214, 306 Ill.Dec. 325, 857 N.E.2d 724, 729–30 (2006) (applying Delaware law); *Silling v. Erwin,* 881 F.Supp. 236, 239 (S.D.W.Va.1995); *Cassata v. Cassata,* 148 A.D.2d 944, 538 N.Y.S.2d 960, 962 (1989); *Pearce v. Superior Court of Kern County,* 149 Cal.App.3d 1058, 197 Cal.Rptr. 238, 244 (1983); *Jones v. Taylor,* 348 A.2d 188, 191 (Del.Ch.1975); George Gleason Bogert, George Taylor Bogert, Amy Morris Hess, BOGERT'S TRUSTS AND TRUSTEES, § 869 (2008). In this case, Wayne alleges he made several demands on the Co–Trustees to investigate and act on Terry's alleged misconduct and that they failed to do so. While these allegations are sufficient to confer equitable shareholder standing upon Wayne to pursue a derivative action on behalf of Hearthside, the bankruptcy filing has complicated matters.

 Terry and the Co–Trustees urge that Wayne lacks standing to bring derivative claims for breach of fiduciary duty on behalf of Hearthside. Additionally, they argue that Wayne's direct claims for breach of fiduciary duty are derivative claims that Wayne cannot properly assert. State law determines whether property belongs to the bankruptcy estate. *Koch Refining, v. Famers Union Cent. Exch.,* 831 F.2d 1339, 1343 (7th Cir.1987) Under Illinois law, a shareholder may step into the shoes of the corporation and bring a derivative action when the corporation's officers, directors, or controlling shareholders breach a fiduciary duty to the corporation. *Lower v. Lanark Mut. Fire Ins. Co.,* 151 Ill.App.3d 471, 104 Ill.Dec. 341, 502 N.E.2d 838, 840 (1986). A shareholder may only bring a direct action against a corporation individually for injuries that the shareholder suffers personally. *Spillyards v. Abboud,* 278 Ill.App.3d 663, 215 Ill.Dec. 218, 662 N.E.2d 1358, 1363 (1996). Recovery in a derivative action inures to the corporation while recovery in the direct action inures to the individual shareholder. *Id.* In order to maintain standing to recover directly from a corporation, one must allege a special injury that "either an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder, such as a right to vote, or to assert majority control, which exists independently of any right of the corporation." *Id.* (quoting *Moran v. Household Int'l Inc.,* 490 A.2d 1059, 1070 (Del.Ch.1985), *aff'd,* 500 A.2d 1346 (Del.Supr.1986). (internal quotations and citation omitted)). The test to distinguish a direct action from a derivative action is to look at the gravamen of the pleadings to see whether the alleged injuries are against the plaintiff upon an individual claim, or an injury that affects shareholders indirectly or affects them as a whole. *Zokoych v. Spalding,* 344 N.E.2d 805, 813, 36 Ill.App.3d 654 (1976). Actions for breach of fiduciary duty against officers, directors, and shareholders that can be brought either by a shareholder derivatively or by the corporation directly have long been held to become property of the bankruptcy estate once the corporation files a bankruptcy petition. *Koch Refining,* 831 F.2d at 1343 (citing *Pepper,* 308 U.S. at 306–07, 60 S.Ct. 238); *but see Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir.1990) (holding

that a claim for equitable subordination may be a claim belonging to an individual creditor).

██ In this case, Wayne has standing to bring any claims where he has suffered a special injury that is personal to him. Those claims where he is suing on behalf of Hearthside can only be brought by the Committee because they are property of the bankruptcy estate. Counts III–X, XIV, XV, XXV, and XXVII of Wayne's Complaint are derivative claims on behalf of Hearthside for an accounting, breach of fiduciary duty, conversion, and unjust enrichment against Terry and the Co–Trustees. They seek damages and related relief to be awarded to Hearthside. These claims are property of the bankruptcy estate and only the Committee may properly pursue them. Therefore, these Counts are dismissed. However, Counts XIII, XVI–XXIV, XXVI, and XXVIII are claims brought by Wayne on behalf of the Trust against Terry and the Co–Trustees; and Count XXXI is a claim brought by Wayne on behalf of Tewaan against Terry and Andee. These claims are not property of the estate and are against third parties.[9] Moreover, these claims will not be dismissed because it can not be said as a matter of law that Wayne cannot prove any facts that would support his claim for relief. The motions to dismiss as they relate to these counts are denied.

## B. Civil Conspiracy

██ Terry and the Co–Trustees seek dismissal of Wayne's civil conspiracy claims against them in Counts XI and XXIX–XXX of Wayne's Complaint. In Illinois, a civil conspiracy claim requires "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atlantic Plant Maint., Inc.*, 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565, 571 (1998). To properly plead civil conspiracy, an agreement and a tortious act committed to further that agreement must be shown. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 241 Ill.Dec. 787, 720 N.E.2d 242, 258 (1999). The agreement is a "necessary and important" element of this cause of action. *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 894 (Ill.1994). The theory of civil conspiracy allows one to recover from the tortfeasor and those who may have planned, assisted, or encouraged the tortious act. *Id.* Civil conspiracy is an intentional tort requiring proof that the defendant "knowingly and voluntarily participate[d] in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *Id.* "Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy." *McClure*, 241 Ill.Dec. 787, 720 N.E.2d at 258. Mere knowledge of the tortfeasor's illegal or fraudulent acts is insufficient for conspiracy. *Id.* Additionally, "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable" for civil conspiracy. *Adcock*, 206 Ill.Dec. 636, 645 N.E.2d at 894. "A defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly to do its part to further those objectives is liable as a conspirator." *Id.* A civil conspiracy is almost never susceptible to direct proof. *McClure*, 241 Ill.Dec. 787, 720 N.E.2d at 258. It is usually established "from circumstantial evidence and inferences drawn

9. The Court notes Terry's assertion that this Court lacks jurisdiction to decide these claims. However, the Court has previously found sufficient "related to" jurisdiction in its August 4, 2008 opinion. *See Hearthside Baking*, 391 B.R. at 814.

from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *Adcock*, 206 Ill. Dec. 636, 645 N.E.2d at 895. The evidence must be clear and convincing to show a civil conspiracy by circumstantial evidence. *McClure*, 241 Ill.Dec. 787, 720 N.E.2d at 258.

The Co–Trustees argue that Wayne's Complaint fails because it does not plead the essential elements of civil conspiracy. Wayne's civil conspiracy counts allege that, beginning in 1998 during the construction of his home, that Terry was involved in litigation relating to the construction of his home and was represented therein by Blum. Wayne further alleges that Terry settled with those parties and funded the settlement with funds misappropriated from Hearthside. Wayne avers that Blum had knowledge of this. Moreover, when Wayne brought this to the attention of the Co–Trustees, they failed to act. These allegations present many questions of fact involving whether Terry used Hearthside funds to settle a personal legal matter and whether he did so with the aid of the Co–Trustees and their knowledge or encouragement of wrong doing. These questions of fact render dismissal of these counts inappropriate on a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

Terry urges dismissal of the Civil Conspiracy claims on a different ground. He asserts that Wayne lacks standing to bring these claims because he is doing so individually. Count XI of Wayne's complaint seeks relief on behalf of Hearthside. This renders this claim property of Hearthside with the Committee being the proper party to bring this type of action. However, Counts XXIX and XXX seek relief on behalf of the Trust and are not property of the bankruptcy estate. Therefore, Wayne has standing to bring these claims. The Co–Trustees' and Terry's mo-tions to dismiss Count XI of Wayne's Complaint are granted; the motions are denied as to Counts XXIX and XXX.

### C. RICO

Terry seeks to dismiss Counts I and II of Wayne's Complaint. Those counts allege that Terry violated 18 U.S.C. §§ 1962(b) and (c) of the Racketeer Influenced and Corrupt Organizations Act (RICO). Terry challenges the claims, asserting that Wayne lacks standing to bring RICO claims against him and that the claims are barred by the statute of limitations. Section 1962(b) states "It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Section 1962(c) provides that it is a crime for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activi-ty[.]" 18 U.S.C. § 1962(c). Section 1964(c) provides civil remedies to a person "injured in his business or property by reason of a violation" of the RICO criminal statutes. 18 U.S.C.1964(c); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006). The elements a plaintiff must establish for a civil RICO claim are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Bridge v. Phoenix Bond & Indem. Co.*, —— U.S. ——, ——, 128 S.Ct. 2131, 2137–38, 170 L.Ed.2d 1012 (2008); *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir.2006). Diminution in the value of the corporation is not sufficient to confer standing to bring an individual claim under

RICO. *Rylewicz v. Beaton Services, Ltd.,* 888 F.2d 1175, 1178–79 (7th Cir.1989). In a bankruptcy case, RICO claims are generally property of the estate that only the trustee (or in this case, a creditors' committee) may bring. *Koch Refining,* 831 F.2d at 1343. To maintain a RICO action individually, a shareholder must allege a direct harm. *Rylewicz,* 888 F.2d at 1178–79.

▨▨▨▨ Wayne must demonstrate that he has suffered a special injury as a result of Terry's alleged RICO acts since these claims generally belong to the estate. In his complaint, Wayne alleges damage to Hearthside and loss of employment in Hearthside. The injury to Hearthside is clearly property of the estate since it would be suffered by all with a stake in Hearthside including creditors and shareholders. Wayne pled loss of employment in Count II of his complaint indicating a special injury. For Wayne to have proper standing to bring a RICO claim, however, he would have to show that his injury was caused by a predicate act under RICO. *Evans v. City of Chicago,* 434 F.3d 916, 924 (7th Cir.2006). Section 1961(1) lists several state and federal crimes that constitute predicate acts. 18 U.S.C.1961(1); *see also LaFlamboy v. Landek,* 587 F.Supp.2d 914, 938 (N.D.Ill.2008). The state law felony offenses include murder, gambling, kidnapping, robbery, bribery, or extortion. 18 U.S.C.1961(1)(A); *LaFlamboy* 587 F.Supp.2d at 938. The federal law violations that constitute racketeering activities include a laundry list of crimes including mail and wire fraud. 18 U.S.C. 1961(1)(B); *LaFlamboy,* 587 F.Supp.2d at 938. Overt acts, those acts which are not *per se* unlawful, but are done in furtherance of a conspiracy are not actionable under RICO. *Beck v. Prupis,* 529 U.S. 494, 505–06, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000); *Walker v. Thompson,* 288 F.3d 1005, 1008 (7th Cir.2002).

While Wayne alleges mail and wire fraud against Terry in his complaint, those allegations are raised in connection with the looting of company assets, and as such, they are claims belonging to the estate. The facts that Wayne alleges in connection with his direct injury, those relating to his loss of employment, include the alleged conspiracy to bring in Andee as a director in order to have Wayne fired as President of Hearthside and removed as a director. The U.S. Supreme Court recently decided a case with almost analogous facts. In *Beck v. Prupis,* a former president of a corporation brought a RICO suit against the corporation's former directors and officers for a scheme that ultimately led to the president's dismissal by the board of directors. *Beck,* 529 U.S. at 498, 120 S.Ct. 1608. The defendants were allegedly involved in unlawful conduct including demanding unlawful fees, diverting corporate funds for personal use, and submitting false financial reports to shareholders, regulators, and creditors. *Id.* The president uncovered these activities and contacted regulators regarding the financial reports. *Id.* The defendants then conspired with each other to have an insurance consultant write a false report stating that the president "failed to perform his material duties." *Id.* The board of directors of the corporation subsequently terminated the president's employment relying on a clause in his employment contract providing for termination for "inability or substantial failure to perform [his] material duties." *Id.* (brackets in original). *Beck* held that the defendants' "alleged overt act in furtherance of their conspiracy is not independently wrongful under any substantive provision of the statute." *Id.* at 506, 120 S.Ct. 1608. "Injury caused by such an act is not, therefore, sufficient to give rise to a cause of action under § 1964(c)." *Id.;*

*compare LaFlamboy,* 587 F.Supp.2d at 938–43 (holding allegations concerning bribery, extortion, mail and wire fraud, and forgery that resulted in plaintiff being defrauded out of his share of a business pled predicate acts for a RICO claim). Any alleged conspiracy to oust Wayne from his employment as President or a director of Hearthside does not fall under any of the predicate acts under 18 U.S.C. § 1961(1); at best, it is an overt act and not a predicate act actionable under RICO. Terry's motion to dismiss Counts I and II of Wayne's Complaint is granted. The statute of limitations issue will not be addressed because the RICO claims have been dismissed on the grounds noted herein.

### D. Turnover of Property under 11 U.S.C. § 542

The Co–Trustees originally sought to dismiss Count LX of the Committee's Complaint on *res judicata* grounds, believing that a debt owed to Hearthside by the Trust was in controversy. However, from the Committee's brief, it is clear that the Committee is seeking a turnover of property under § 542 of the Bankruptcy Code. Specifically, the Committee seeks turnover of a claim worth $2,331,733.36 against the Trust in favor of Hearthside relating to funds Irwin borrowed from Hearthside before he passed away in 1997. This claim was allowed by the Probate Court of Cook County, Illinois on September 15, 1997. (Co–Trustees' Memo. in Support of Their Motion to Dismiss Counts II and LX of the Adv. Compl., Case No. 08–AP–00237 [Dkt. No. 79], Ex. B). In their reply brief, the Co–Trustees argue that it was not clear that they were seeking § 542 relief and "respectfully urge the Court to order the Committee to amend Count LX, at which time the appropriate response can be determined." (Co–Trustees' Reply Brief in Further Support of Their Motion

to Dismiss Counts II and LX of the Adv. Compl. Filed by the Creditors' Comm., Case No. 08–AP–00237 [Dkt. No. 148], pg. 9).

■ Although not specifically argued by the Co–Trustees, the Court will deem it a challenge on Fed.R.Civ.P. 12(b)(6) grounds. Stated earlier, Fed.R.Civ.P. 12(b)(6), made applicable by Fed. R.Bankr.P. 7012, requires the complaint only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Concentra Health Servs.,* 496 F.3d at 776. The complaint must give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 127 S.Ct. at 1964. Noting the applicable pleading standard, § 542(b) provides:

> [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b).

Count LX withstands pleading scrutiny under Fed.R.Civ.P. 8(a) and 12(b)(6). It pleads that Hearthside is owed a debt payable from the Irwin Cohen Trust, a debt that is not disputed. Additionally, Count LX seeks relief from the Co–Trustees in their capacity as trustees of the estate. Count LX contains the required short and plain statement of a claim providing fair notice of what the claim consists of and the grounds on which it rests. Instead of addressing this count, the Co–Trustees wish to reserve their arguments until a further amendment to the complaint is made. However, any such arguments should be addressed in the briefs, not at the occurrence of a speculative fu-

ture event; the Committee may decide not to amend its complaint. The Co–Trustees' motion to dismiss Count LX is denied.

### E. Wayne Cohen's Motion for Judgment on the Pleadings and to Strike Paragraph 65 from the Creditors' Committee's Complaint

Finally, Wayne moves for judgment on the pleadings of Counts XIV–XIX and XXI of the Committee's Complaint pursuant to Fed.R.Civ.P. 12(c), made applicable by Fed.R.Bankr.P. 7012, and to strike paragraph 65 from the complaint. Rule 12(c) states "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). This motion is properly filed since Wayne has filed his Answer to the Committee's Complaint.

■■■■■ These claims involve fraudulent transfers that must be pled with specificity as required by Fed.R.Civ.P. 9(b). However, the heightened specificity requirement for bankruptcy trustees, or creditors' committees in this case, is slightly relaxed given the "inevitable lack of knowledge concerning acts of fraud previously committed against [a] debtor, a third party." *Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman,* 277 B.R. 20, 36–37 (S.D.N.Y.2002) (quoting *Schwartz v. Kursman (In re Harry Levin, Inc., t/a Levin's Furniture),* 175 B.R. 560, 567–68 (Bankr.E.D.Pa.1994)); *see also, e.g., Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 497–98 (N.D.Ill. 1988); *Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur Andersen L.L.P.,* 175 F.Supp.2d 1180, 1201 (D.Ariz.2001); *Profilet v. Cambridge Fin. Corp.,* 231 B.R. 373, 379 (S.D.Fla.1999); *In re Grand Eagle Companies,* 288 B.R. 484, 495–96 (Bankr.N.D.Ohio 2003). Wayne concedes that the Committee's allegations regarding three transfers made to Wayne in Decem-

ber 2007 totaling $122,186.80 are sufficient to meet the heightened pleading standard. Instead, Wayne challenges other allegations concerning transfers allegedly made to Wayne from January 18, 2003 and January 18, 2008.

Count XIV alleges transfers made between January 18, 2006 through January 18, 2008 totaling $122,186.80. These transfers coincide with other allegations involving the same transfers that Wayne already conceded met Rule 9(b) scrutiny. Wayne's motion for judgment on the pleadings on Count XIV is denied.

Counts XV–XIX and XXI do not provide specific amounts of transfers that encompass a time period of five years, from January 18, 2003 through January 18, 2008. Instead, the Committee relies upon paragraph 184 of its complaint alleging that, because Terry is still in control of Hearthside's books and records, the Committee has been unable to identify the full amount of any transfers to Wayne, and reserves a right to amend its complaint to seek recovery of additional transfers. (Comm. Amended Compl., Case No. 08–AP–00279 [Dkt No. 95], pg. 30, ¶ 184). However, Counts XV–XIX and XXI reference all previous allegations before it including transfers to Wayne, Terry, Andee, Barton, and Shimon. Additionally, the aggregate of the $122,186.80 transfers that Wayne conceded were sufficiently pled are included in that time period. These counts plead different theories of recovery as well. In light of the Committee's third party status, essentially as an outsider brought in, demanding a relaxed pleading standard under Rule 9(b) and the other well pleaded allegations, Wayne's motion for judgment on the pleadings pursuant to Rule 12(c) is denied.

Lastly, Wayne moves to strike paragraph 65 of the Committee's Complaint pursuant to Fed.R.Civ.P. 11(c)(4). Howev-

er, the counterpart to that rule in the Bankruptcy Rules, Fed.R.Bankr.P. 9011 does not contain subsection (c)(4). However, a similar rule is found in Rule 9011(c)(2) which allows a sanction of a nonmonetary nature. *See* Fed.R.Bankr.P. 9011(c)(2). The Court will consider Wayne's requested relief as a motion for an award of sanctions under Fed. R.Bankr.P. 9011(c)(2).

 The "basic purpose of Rule 9011 is to deter baseless filings." *In re Kitchin*, 327 B.R. 337, 363 (Bankr.N.D.Ill. 2005) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). Rule 9011 sanctions are appropriate when "(1) the papers are frivolous, legally unreasonable, or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose." *In re Mroz*, 65 F.3d 1567, 1572 (11th Cir.1995). "Accordingly, the court's inquiry should only focus on the merits of the pleading gleaned from the facts and law known or available to the attorney *at the time of filing.*" *Id.* (quoting *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694–95 (11th Cir.1995) (emphasis in original)). Rule 9011 does not impose a continuing obligation to amend a complaint. *Id.*

 Paragraph 65 states "The Financial Statements for Hearthside dated June 30, 2007, do not disclose any loans to the Debtor from Wayne Cohen." (Comm. Amended Compl., Case No. 08–AP–00237 [Dkt. No. 95], pg. 11, ¶ 65). Wayne argues that the financial statements in question properly disclose a loan, and that he has repeatedly informed the Committee of the error, and the Committee has failed to correct its pleading despite the information

provided by Wayne. To support his assertion, Wayne attached a copy of a financial statement as an exhibit to his Answer to the Committee's Complaint. (Wayne's Answer to Amended Complaint, Case No. 08–AP–00237 [Dkt. No. 112], Ex. 1). This statement is titled "Maurice Lenell Cooky Company, Inc. Custom Transaction Detail Report July 2007 through June 2008." [10] The document shows a "General Journal" credit entry for $105,228.10 on July 1, 2007 and a "Check" entry with "Wayne Cohen" under the "Name" category and "Repayment o" [sic] under the "Memo" category with a debit for $105,228.10. Looking at this document, it could be interpreted as a repayment of a loan by Wayne. Conversely, it also could appear that the entry has nothing to do with any loan information and is ambiguous. Therefore, paragraph 65 lacks the unsound legal basis, factually deficient, or improper purpose that would warrant a sanction under Rule 9011. Wayne's motion to strike paragraph 65 of the Committee's Complaint is denied.

### V. CONCLUSION

For the reasons stated above, the Co–Trustees' motion to dismiss Wayne's Complaint is GRANTED as to Counts V–VIII, and XI and is DENIED as to Counts XVI–XXIII, and XXIX–XXX. The Co–Trustee's motion to dismiss Counts II and LX of the Committee's Complaint is DENIED. Terry's motion to dismiss Wayne's Complaint is GRANTED as to Counts I–IV, IX–XI, XIV, XV, XXV, and XXVII and is DENIED as to Counts XIII, XXIV, XXVI, and XXVIII–XXXI. Wayne's motion for judgment on the pleadings as to Counts XIV–XIX, and XXI of the Committee's Complaint, and his mo-

---

**10.** The Court notes the financial statement provided by Wayne is actually for the time period July 2007 through June 2008, implying a transaction occurring on June 30, 2007 may not be reflected in the exhibit.

tion to strike paragraph 65 of the Committee's Complaint are both DENIED.